MORRISON *v.* MANCHESTER.

Mortgaged property may be taxed to the mortgagor in possession.

APPEAL, from the refusal of the tax assessors of Manchester to abate a part of a tax assessed by them to the plaintiff for his real estate, which is subject to mortgages given by him to a savings-bank as security for loans made to him by the bank.   The amount of the mortgages is $10,000.   In the assessment, the property is appraised at $10,500.   The plaintiff claims that he is taxable for the equity of redemption only, and that there should be an abatement of the tax except so much as, on a division of the assessment, should be laid upon the equity.   The question was reserved, whether the mortgagor is taxable for the value of the mortgaged property, or only for the value of his equity of redemption.

*C. R. Morrison*, for the plaintiff.

I.   In New Hampshire the mortgagor is not sole owner of the land. The interest of the mortgagee in the land is as truly an interest in real estate as that of the mortgagor, and is often a greater interest. It is an abuse of language, and an " affront to common-sense," to say that the mortgagor is the real owner of the land.   It takes both the mortgagor and the mortgagee to own the land.   Gen. St., *c.* 121, *s.* 4— *c.* 257, *s.* 6 ; *Lund* v. *Lund*, 1 N. H. 41 ; *Brown* v. *Cram*, 1 N. H. 169 ; *Runlet* v. *Otis*, 2 N. H. 167 ; *Tift* v. *Walker*, 10 N. H. 150 ; *New London.* v. *Sutton*, 2 N. H. 401 ; *Pembroke* v. *Allenstown*, 21 N. H. 115 ; *Hobart* v. *Sanborn*, 13 N. H. 226 ; *Tripe* v. *Marcy*, 39 N. H. 439, 444 ; *Chellis* v. *Stearns*, 22 N. H. 312 ; *Furbush* v. *Goodwin*, 29 N. H. 321, 332 ; 1 East 288 ; Jones on Mortgages, *ss.* 11— 20 ; Bouv. Law Dic., " Property."

II. By statute (Gen. St., *c.* 52, *s.* 2), owners of distinct interests in real estate are to be assessed separately.

III. It was a good reason for not assessing the bank, that it was assessed in another form—for the money loaned upon the mortgage. If also assessed for the value of its interest as mortgagee, there would be in effect a double tax to the bank upon substantially the same subject. which is clearly inadmissible    *Kimball* v. *Milford*, 54 N. H. 406, 413 ; *Savings Bank* v. *Portsmouth*, 52 N. H. 17 ; *Smith* v. *Exeter*, 37 N. H. 556 ; *The People* v. *Hibernia Bank*, 51 Cal. 243 ; *Savings Society* v. *Austin*, 46 Cal. 491, 493–495, 502 ; *The State* v. *Sterling*, 20 Md. 502 ; *Railroad* v. *Charlestown*, 8 Allen 330 ; *Baltimore* v. *Railroad*, 6 Gill 288.    But this does not justify an assessment to the mortgagor for the mortgagee's interest.    Hence by the statute he should upon request have been assessed only for his separate interest as mortgagor.

IV. And the legislature has, under the constitution, no power to assess a mortgagor for anything more than his equity of redemption. It has no power to assess him for anything more than what he owns, and all that he owns is an equity of redemption.    It has no power to assess him for the value of the mortgagee's interest, for he does not own that interest.    It has no more power to assess him for what he does not own, than it has to put a double tax upon him for what he does own.    An assessment against the mortgagor, which includes the interest of the mortgagee, is not the mortgagor's " share."    It is not " proportional and reasonable," but grossly unreasonable and oppressive.    Bill of Rights, Art. 12 ; Con., Art 5 ; 4 N. H. 567.

V. That the mortgagor is in possession does not warrant an assessment against him for what he does not own.    He has no remedy over against the mortgagee.    There could be no remedy over given to him without subjecting the bank to double taxation, it being taxed in another form for the money loaned.

VI. If the taxes assessed against both can be sustained, there is in substance. so far as relates to the interest of the mortgagee, a double tax for the same thing ; and the fact that the excess is placed upon the debtor instead of the other party does not relieve it of its oppressiveness and unconstitutionality.

*Cross* and *Patten*, for the defendant.

The law, and the practice upon it in this state for more than seventy-five years, have been to tax notes as personal property, whether secured by mortgage upon real estate or not, and to tax real estate at its true value as unencumbered, whether there be mortgages upon it or not. This fact is certainly strong presumptive evidence that our people and the courts believed this to be the law, and that it is just and equitable.

The plaintiff claims that the mortgagor is not the sole owner of the land, according to decisions here and elsewhere.    In this state the mortgagor's interest in the land may be attached as real estate, and

sold on execution. His widow is entitled to dower in it. It passes as real estate by devise or by deed ; it descends, at his death, as real estate to his heirs ; it gives him a right of settlement as the owner of real estate. He is a freeholder : he may maintain a real action for the land against a stranger ; he has been taxed for it as sole owner. On the other hand, the mortgagee has no such estate or interest in the land as can be attached or sold on execution. His widow has no right of dower in it. Upon his death the mortgage passes to his personal representatives as personal property. It passes by his will as personal property. An endorsement and delivery of the note carries the mortgage without any delivery or written assignment of the mortgage. *Page* v. *Pierce*, 26 N. H. 317. A deed of mortgaged property from the mortgagee, before possession taken, conveys no interest. *Lamprey* v. *Nudd*, 29 N. H. 304. Until foreclosure is had upon a mortgage given to several, or the title has by process of law become vested in the mortgagees or their assignees, their interest is one of security, and they are not tenants in common of the land. . *Johnson* v. *Brown*, 31 N. H. 405. In *King* v. *St. Michael's*, Doug. 630, 632, a pauper settlement case, Lord MANSFIELD says,—" It is an affront to commonsense to say the mortgagor is not the real owner." The mortgagor and his representatives, so long as they hold the possession, are regarded as the owners ; and the mortgagee, out of possession, is taken to have a mere lien upon the property for the security of his debt. 1 Jones on Mortgages, *s.* 2; *Chellis* v. *Stearns*, 22 N. H. 314; *Ellison* v. *Daniels*, 11 N. H. 274.

The plaintiff contends, that as the bank in this case pays a tax upon the money loaned to him, this tax upon his land is, to the amount of the mortgage, a double tax. The opinion of the New Jersey commission, of which the state chancellor was a member, is expressed as follows : " Taxes on property are defined to be the tribute which that property owes to the state for the protection, security, and consequent value it receives from the government of the state. The protection so received is commensurate with the property held, and not with the sum or balance the holder may be found to be worth. If the owner of land be indebted to his creditor for the value of the land, and this indebtedness be represented by note or bond, the land is one property, and the note or bond another. Each is protected by the law, and each owes its tribute to the law. They are in no sense the same, different in their natures, their titles, and the uses to which they may be put. Each may be sold and transferred by the holder without regard to the other. Nor does the note necessarily represent or depend for its value upon the land. It may be paid by other means and other property— by the industry, the labor, or the future services of the maker. For all other purposes the note and the land are regarded by the law, and are treated, in fact, as distinct and valuable things. Why should they not be treated as such in the laying of taxes ? The credit is given, and the note or bond or mortgage is made, because the convenience and advantage, both of buyer and seller, are thereby subserved. The

buyer prefers the one property, the seller the other. Taxing each property once is not double taxation."

The Connecticut commission, quoting the above opinion, adds,— "We hold these views to be sound, and that all property under the full shelter of the law should pay tribute for that shelter according to its protected value, without any regard to any questions of indebtedness or securities incidentally growing out of it. These questions of indebtedness, erroneous in principle, and offering motives for the creation of fictitious debts for offset, have ever been and must continue to be a prolific source of dispute and vexation in their adjustment, and continually calling for legislative changes." "By duplicate taxation in this sense is understood the requirement that one person, or any one subject of taxation, shall directly contribute twice to the same burden, while other subjects of taxation belonging to the same class are required to contribute but once." With this definition of double taxation, it is argued by Cooley that the taxation of the real estate to its full value and the mortgage debt is not double taxation. Cooley on Taxation, *c.* 6; *People* v. *Eddy*, 43 Cal. 331; *Lick* v. *Austin, id.* 590. Hilliard on Taxation, pp. 160, 170, takes the same view. In *People* v. *Rhodes*, 15 Ill. 304, referred to on page 170 of Hilliard, it is said,— "Thus A sold land to B, gave bond for a deed, received a portion of the purchase-money, and took notes for the residue in annual instalments. B took possession and listed the land for taxation, and A was also assessed for the notes. *Held*, not double taxation of the same property, and A must pay the assessment. The court says,—'A person having property in possession is assessed for its full value, although he may at the time be indebted for it.'"

*C. R. Morrison*, for the plaintiff. Second brief.

If the bank were to foreclose the mortgage, the invoice would be lessened by the whole sum for which the land was appraised: would the state be wronged? A owns real estate worth $10,000, and invoiced at that sum. B has that sum on hand or at interest. B collects in his money, and buys the property of A, who takes the money to pay debts of a character to leave no party taxable, or he invests in four per cents.: is the state wronged because the invoice is lessened $10,000? Or A, having $10,000 invested in the West at ten per cent., hires $10,000 at four per cent. on call, invests the money in United States bonds, which he pledges as security: is the state wronged because he strikes $10,000 out of the invoice? It is plain that the rule must be that the state has no ground of complaint that the invoice is lessened by any *bona fide* legitimate transaction; and a mortgagor is as much entitled to the benefit of this rule as anybody else.

The property of the bank in the debt, and its property in the real estate to the extent of the value of that interest, are substantially the same thing for the just purposes of taxation, or else they are substantially different. If substantially different, why may not the bank be

taxed for each, just as much as one may be taxed for a yoke of oxen, in addition to a horse, if he owns both of them ? And if substantially the same, is there any escape from the conclusion that there is a double taxation of the same subject-matter,—once to the bank which owns it, and once to the mortgagor who does not own it ? Regard is to be had to the substance of things. Our court has repeatedly held that a savings-bank, being once taxed for all the money deposited in it, however invested, cannot be again taxed for its real estate, thus treating real estate of which it is absolute owner, as being substantially the same thing for taxation as the money with which it was .purchased. Nor can any one be taxed for it. And if a third person not owning this real estate of the bank shall not be taxed for it, and the bank cannot be taxed for it, on what principle shall a person, not owning the interest of the bank as mortgagee of real estate upon which it has loaned its money, be taxed for that interest ?

Why is it not the property of the mortgagee for the purpose of taxation ? Does the court doubt the power of the legislature to tax the mortgagee, as mortgagee, to the value of his interest in the land, and in no other way ? And if, in addition, the mortgagor is taxed for the value of his interest, the whole value of the land is assessed.

The argument against the plaintiff is this : The plaintiff is sole owner for some purposes, and therefore he may be assessed as if sole owner for all purposes—which is very poor logic. And the bad logic becomes an outrage upon him, when the purposes for which he is and those for which he is not sole owner are considered. He is not sole owner for the purpose of giving it away, or selling it, or willing it, or endowing his wife with it, or transmitting it to his heirs, or even for acquiring a settlement when driven by poverty to seek a friendly shelter from his misfortunes. And what is there left, beyond his equity of redemption, to make a tax upon him, as if sole owner for all purposes, anything but the grossest oppression ? The property may produce no income. If it does produce an income, he must apply it, or its equivalent, which is the same thing, to keep down the interest, or the value of his estate as mortgagor will be decreasing every day, and he will ere long have a feeling sense that he is not sole owner for any substantial purpose. And for what purposes is he sole owner ? If it were true that the land were his for all purposes as against all the world except the mortgagee, the little finger of the mortgagee is heavier upon him than the whole body of the rest of mankind. What comfort is it to him that the land is his as against those who have no right to raise the inquiry, but is not his for any purpose, nor can his family derive any benefit from it, as against the man who has a right to dispossess him and them at his will ? A mortgagee, unless restrained by his mortgage, can demand possession at any time, and turn out the mortgagor and his wife and children, if he has any, and make them trespassers for any subsequent occupation. He may bring a real action against them at any time, and without a notice to quit. If he enters upon him with a strong hand, he is not a trespasser, for

the land is his until the debt is paid.   As has been said, he is not sole
owner as against the town, which taxes him as such, for the purpose
of gaining a settlement.

All that his ownership, as to the rest of the world besides the
mortgagee, amounts to is, that as against those who have no business
to inquire he is to be deemed sole owner; and this would be equally
true if he had nothing but a naked possession.   In truth, the purposes
for which he is to be deemed owner are incidents to his equity of re-
demption, and are to be considered in estimating its value.   We do
not object to his being taxed for his equity of redemption, and all it is
worth, with all its incidents.   What we object to is his being taxed, in
addition to this, for the value of the interest of the mortgagee in the
land.   And if it were true, that in addition to the value of the equity
of the redemption there is an additional value to him, for which he
should be taxed, in the fact that as to the rest of the world besides
the mortgagee he is owner for some purposes, or even for all purposes,
on what principle of right or constitutional law is his taxation to be
carried beyond this ?   The purposes for which he is not owner greatly
impair, and if the debt is large enough may almost destroy, the value
of his interest under all the aspects in which it can be viewed.   Then
on what principle can the court justify a tax upon him as if he were
sole owner against all the world ?   Is there any greater power to tax
one for what he does not own, than there is to put a double tax upon
him for what he does own ?   The authority granted by the constitu-
tion is, " to impose and levy proportional and reasonable assessments,
rates, and taxes upon all the inhabitants of and residents within the
said state, and upon all estates within the same."   Will this court
maintain that an assessment upon an inhabitant for another man's
estate is either " proportional " or " reasonable " ?   Why should A be
taxed for B's estate ?   Can it be done under the constitution ?   Can
it be done without outraging that sense of natural justice which is to
be found even among savages and barbarians ?   Does the mortgagor
own the estate of the mortgagee in the land ?   Grant to the utmost all
that can be said as to any and all purposes for which the mortgagor is
owner in any sense: what then ?   They do not embrace the whole
property of the land, and may embrace but a small part of it.   When
the assessors have gathered up all the purposes for which the mort-
gagor is owner, and found the value of his estate in view of them all,
any assessment against him beyond this is robbery.   And it is robbing
the poor, that other men may be eased of the burdens which justly
belong to them.

Upon what principle of justice or constitutional law does no part of
the value of the land belong to the mortgagee for purposes of taxation ?
A bill has just passed the Massachusetts house of representatives, by
nearly a two-thirds vote, assessing the mortgagee as mortgagee, and
in no other way.   Would not such a law be constitutional in New
Hampshire ?   Is there any doubt of it ?   If there is not, what becomes
of the assumption, that no part of the value of the land belongs to the

mortgagee for purposes of taxation ? If the mortgagor does not own the mortgagee's estate, it does not belong to him for purposes of taxation ; and to put it upon him is gross oppression. No part of the value of the land is destroyed by the mortgage ; and therefore that part that does not justly belong to the mortgagor, for purposes of taxation, must remain to the mortgagee.

Wherever there is a mortgage of land there are two estates in the land,—the estate of the mortgagor and the estate of the mortgagee. They are created, and in a great variety of ways recognized and protected, by the law as separate estates. They are separate estates as truly and substantially as the separate interests of tenants in common are separate estates. The plaintiff's claim is, that the mortgagee shall not be taxed for the estate of the mortgagor, nor the mortgagor be taxed for the estate of the mortgagee, but that each shall be taxed once, and once only, for his own estate. He is unable to see how this involves the maintenance of the proposition, that no one can be taxed beyond what he would be worth if all his debts were paid. A mortgagor may be owing a great many debts in addition to his indebtedness to the mortgagee : that is no reason why he should be taxed for the mortgagee's interest in the land.

The constitution only authorizes "proportional and reasonable assessments." Is it either "proportional" or "reasonable" to tax one for that which belongs to another man ? Can A be taxed for B's money at interest, or bank stock, or railroad shares ? Can there be any answer to the proposition, that one cannot be taxed in his own right for an estate which he does not own ?

Laws in violation of natural right and a just construction of the constitution are not beyond judicial control, however late they may be brought to the notice of the court. Wrong and injustice are not to be perpetuated merely because those to be profited by the law may succeed in preventing a repeal. It should require a much stronger acquiescence than has existed here, to uphold oppression and extortion and downright robbery by the sanction of the court. Says Story, of contemporary construction,—"It can never abrogate the text ; it can never fritter away its obvious sense ; it can never narrow down its true limitations ; it can never enlarge its natural boundaries." "Acquiescence for no length of time," says Judge Cooley, "can legalize a clear usurpation of power, where the people have plainly expressed their will in the constitution, and appointed judicial tribunals to enforce it. A power is frequently yielded to merely because it is claimed, and it may be exercised for a long period, in violation of the constitutional provision, without the mischief which the constitution was designed to guard against appearing, or without any one being sufficiently interested in the subject to raise the question."

Now we say, in the first place, that our constitution, as judicially interpreted, withholds from the legislature power to make any " order or law in plain violation of the fundamental principles of natural justice, though the act may not be prohibited by any express limitation

in the constitution." (Perley, C. J., 48 N. H. 59.) Any law, therefore, against natural justice is "a clear usurpation of power." Laws in respect to taxation are no exception. Our court have declared that there is no power to levy other than " proportional and reasonable " taxes, and that a tax, to be " reasonable" within the meaning of the constitution, must be just. (4 N. H. 569.) And in the second place we say, that, there being two estates in land, a law that taxes the owner of one of them only, for both, is " a plain violation of the fundamental principles of natural justice." Its injustice is palpable, whenever the subject is understood, and admits of no discussion. One might as well discuss the multiplication table, or say that a part is equal to the whole, as to argue that the owner of but one of the estates can be taxed in his own right, and against his consent, as if he were the owner of both. This is precisely the mortgagor's case. He is not the owner of the whole estate, and no ingenuity or sophistry can make him appear to be such, or give any color of justice to a tax against him as if he were the owner of the whole. If the injustice is no greater, the hardship is more unendurable, because the unequal burden of an unjust taxation is put upon the shoulders of those who have enough to do to meet their own just proportion. It has been judicially determined that a mortgagor, who is taxed for the whole and pays the tax, cannot gain a settlement unless his equity of redemption is of the value of one hundred and fifty dollars. Is he an owner of the whole for the purposes of taxation, and the owner of but a part for the purpose of gaining a settlement? Shall an ownership which is not real, by a legal fiction be falsely imputed to him for purposes of taxation, in order that an unequal and oppressive burden may be forced upon him, and others escape? Can this be done under the constitution?

*Cross* and *Patten*, for the defendant. Second brief.

From 1780 to the present time, the law and practice have been uniform. The acts of March 16, 1780, February, 1791, February 22, 1794, and every legislative compilation or revision of the laws, have taxed the mortgage debt and the land. The men who made the constitution made these laws. The contemporaneous construction of the constitution is entitled to great weight. *Concord Railroad* v. *Greely*, 17 N. H. 47, 62, 63.

In *Nashua Savings Bank* v. *Nashua*, 46 N. H. 389, 399, Perley, C. J., says,—" Then, again, it is contended that to double taxation is no legal objection, because land mortgaged is taxable to the mortgagor, while at the same time the mortgagee is taxable for the money secured on the land as for money at interest. If this were in substance a double tax, it would only show that the statute has in this instance admitted an anomaly in conflict with the general policy of the law, which can only be excused on the ground that from the nature of the case the injustice of double taxation cannot be avoided. But in such a

case there is in fact no double taxation of the same property. Neither the land nor the money is twice taxed. The mortgagor may be burdened with taxes disproportioned to his means; but it is not because he has mortgaged his land to secure the payment of the money which he has the misfortune to owe. His case in this respect would be no way improved if he had obtained the money on the personal security of his friends, or without any security at all. If he pays more taxes than he can afford, it is one of the many inconveniences that belong to the condition of a man in debt, and not because the money which he owes has been raised by a mortgage of his land." In the same case (p. 408) Judge BELLOWS says,—" As before remarked, the policy of our law has been to tax all real estate and the enumerated personal property, which includes most of that which is visible, to the apparent owner, and in respect to all but money at interest no deduction is made because of debts owing by such owner, the purpose evidently being to subject all the visible and tangible property in the state to taxation without regard to the condition of the owner, and with as little embarrassment as possible from questions of title. * * * To justify the omission to tax such property, the intention of the legislature ought to be pretty clearly manifested. In the case of individuals, it is no excuse that his property, whether real or personal, is mortgaged to secure the price, and that the mortgage debt is taxed. It has never been the law, although often urged upon the ground of double taxation; and it is now settled by express legislation that such property is liable as well as the mortgage debt."

The statutes and decisions of other states agree with ours. This has been argued more fully in *People* v. *Worthington*, 21 Illinois 171, than in any case we have found. CATON, C. J., in this case, says,—" The constitution means as it declares, that each shall pay a tax in proportion to the property which he has, whether that property consists of farms, or mortgages; of visible substances, or choses in action. It is not to be denied that this rule of taxation must in some, nay, in many, instances operate unequally and even oppressively; and such may be the case of the defendant here. He sells a piece of land and gives a deed, and takes a note to secure the purchase-money. He is taxed for the amount due on the mortgage, and the purchaser is taxed for the land; and if the purchaser neglects to pay these taxes, then the seller must do it himself or lose his security. This is a hardship, no doubt, but, like many other hardships which befall mankind, it results from the failure of another to perform his duty, and must be provided against by greater caution in selecting a purchaser, or in seeking satisfaction of him for the taxes paid on the land. It may be true, in one sense, to say that it is double taxation to tax the horse which is sold and also the note which is given for the purchase-money; and so it is to tax the note which is given for one hundred dollars borrowed money, and also the money which is borrowed;—and so we might go on throughout the whole system of human transactions, which involves a credit for things tangible which are within the state and subject to

taxation; and even so it is if they are beyond the state, for the pre-
sumption is that they are taxed wherever they may be."

The logical result of the plaintiff's doctrine would lead to exempt-
ing all credits from taxation. There is no reason why the plaintiff
who secures his indebtedness by mortgage upon real estate should pay
any less tax than his neighbor who owes an equal amount and does
not give a mortgage. The merchant and manufacturer pay a tax
upon their stocks of goods and materials, although indebted for them.

The tax commissioner of Massachusetts says,—" The credit class of
property includes substantially all personal property assessed in the
commonwealth, except stocks of goods, live-stock, and incomes: so
that the broad question must be met in the beginning, before you touch
the question of the exemption of mortgage notes, whether you are
prepared to exempt all classes of credit property; for, if you do not,
it seems to me perfectly clear (and I think it will appear the same to
any man), that, instead of removing a claimed injustice, you are really
perpetrating an undoubted one. * * * Credits are property, valuable
property to the holder; and there is no distinction in that respect be-
tween credit, and visible, tangible property, and taxes should be
assessed upon them without any distinction. * * * I think it is clear,
that the holders of credits reap a larger share of the benefit than hold-
ers of real and fixed property, many times over. If these things are
so, certainly the holders of credit property ought to pay their share
toward the burden. The claim is made, that a tax upon credit in this
form is a tax upon the person who uses the credit. That is, I think,
a fallacy of the same kind as that so often repeated, that the farmer
supports the whole of the community. In one sense it is true: the
community could not live without the things which the farmer raises.
It is undoubtedly true, that if everybody who cultivates the ground
should stop cultivating it, all hands would die. In this sense it is true
that the farmer supports the community; but it is not true, that if
the rest of the community should stop what they are doing and go to
farming, the farmer would be so much better off. Yet it is precisely
the same kind of statement that is made when it is said that when a
person is taxed upon a credit, it is a tax upon the person using the
property, upon the borrower. * * * The users of property must pro-
duce enough to include that part taken for taxes. But if taxes are
assessed upon all property, the assessment on a credit reduces only
the lender's share of the product as between the borrower and lender.
For there is no way to shift the burden by making loans which are
free from tax. * * * The result of an exemption of mortgage notes
will not be to benefit the borrower, but the lender. It has been tried
with regard to mortgages in New York, it has been tried in half of
New Jersey and in Pennsylvania, lately in Connecticut, enough to have
effected a reduction in the rate of interest in those localities if that
was to be the result of any such change in the basis of taxation; but
no such result has been shown. If a tax is always paid by the bor-
rower, then the lender has no occasion to live in Nahant or Milton,

except from motives of charity to the borrower. But I do not know that a man could borrow money any cheaper from a resident of Nahant or Milton than of one who lives in Boston. The rate of interest is determined by other causes outside of taxation; and the effect of taking off this tax will be to relieve people whose capital is in that form, and, as a correlative result, the increase of their income to a corresponding amount."

*C. R. Morrison*, for the plaintiff. Third brief.

The argument is simple, and may be stated thus: The mortgagor can be taxed only for what he owns. He owns only an equity of redemption; therefore he can be taxed only for an equity of redemption. If the premises are true, the conclusion is inevitable. If they are not true, it should be easy to show it.

That there is a double taxation is not an essential part of the argument. The legislature has as much power to tax mortgagors twice as once for what they do not own. If, by law, mortgagees could not be taxed for the money at interest, yet, unless the plaintiff's premises are false, the tax upon him beyond his ownership would be robbery.

" By reason of the taxation of the mortgage, he is taxed twice. Double taxation is, in plain English, confiscation; for if the state arbitrarily makes me pay on my land double what it makes my neighbor pay on his, it confiscates my property to the amount of the extra tax." Atlantic Monthly, November, 1878. "An unlimited power in the legislature to make any and every thing lawful which it might see fit to call taxation, would, when plainly stated, be an unlimited power to plunder the citizen." Cooley Taxation 68. " To lay with one hand the power of the government on the property of the citizen, and with the other to bestow it on favored individuals to aid private enterprises and build up private fortunes, is none the less a robbery because it is done under the forms of law and is called taxation." MILLER, J., in *Loan Association* v. *Topeka*, 20 Wall. 655, 664.

In *S. & L. Society* v. *Austin*, 46 Cal. 415, 491, the court overruled all previous decisions to the contrary, and held that the mortgagee could not be taxed for the money loaned. The reasoning of the court as summarized by Judge Cooley was, that the tax would be taken into account in making the loan, and be in effect paid by the mortgagor who has also been taxed for the land. Judge Cooley criticises this reasoning, and says it would equally apply to loans where there is no mortgage; and it may be justly open to this criticism. If, in such case, the mortgagor pays the tax assessed upon the mortgagee, it is because he agrees to do it, and not because there is any legal compulsion. But the doctrine was reaffirmed in *The People* v. *H. S. & L. Society*, 51 Cal. 243. The only case I have met with, where the mortgagor has been the party objecting, was the previous case in the same state, of *Lick* v. *Austin*, 43 Cal. 590, which was virtually overruled by the subsequent decisions. There is also the very material distinction, that by the constitution and laws of California (cited in Jones

on Mortgages) a mortgage is a mere security and lien, and does not, until foreclosure, transfer any estate in the land to the mortgagee.

The great question here is not that of double taxation. It is, Can the legislature tax the petitioner for what he does not own, and does he own the land ? Which of the plaintiff's premises will the court refuse to accept? They must be determined under the statute of our state, by the express terms of which a mortgage of real estate is " a conveyance of land," and in view of all the known consequences of a mortgage to the mortgagor and his family. They must also be determined in view of the decisions under the settlement law. If a mortgagor has only an equity of redemption for the purpose of gaining a settlement by the payment of taxes upon land of which he is the owner, the only possible logical conclusion is, that he can have only an equity of redemption for the purpose of being taxed.

The petitioner submits, as too plain for argument, that in every case of a mortgage there are two estates in the land, and that the mortgagor owns but one of these, to wit, the equity of redemption ; that whatever be the other incidents of a mortgagee's interest, it is an interest in the land ; and whatever may appertain to an equity of redemption, it is something less than the whole estate, and it may be but a small part of it. The property described in the petition is mortgaged for ten thousand dollars. If your honors shall decide that he is the owner of it, the plaintiff, with his experience, must still say he is not the owner of it except for paying taxes. He knows that he is in upon sufferance, and that the bank, as mortgagee, can turn him out any day. Were he to insure without disclosing the mortgage, the policy would be void ; and now, the bank in case of fire will take the insurance. It draws a constant income right out of the land, for, if he were to fail in paying the interest, his real ownership would soon become so small that payment of the very taxes assessed against him, as if owner of the whole, would not keep him or his from the county farm. The bank can seize the unharvested crop. It can collect the rents now due, and compel his tenants to become its tenants or quit. He cannot cut a single tree. He cannot sell a foot of the land. If any of the land is taken for a public use, the bank can intercept the damages.

Doe, C. J. The supreme legislative power, vested in the senate and house of representatives by the second article of the constitution, includes the power of taxation, which is the power of causing a constitutional division to be made, among the members of the community, of the public expense, of which each one is, by the twelfth article of the bill of rights, bound to contribute his share. Each one is bound to contribute his share of the expense incurred by all in protecting the life, liberty, and property of each, and promoting the common welfare. What each is bound to contribute being a debt of constitutional origin and obligation, no part of the share of one can be constitutionally exacted of another. And as any one's payment of less than his share leaves more than their shares to be paid by his neighbors, his non-payment of his full share is a violation of their constitutional right.

Such non-payment is, in effect, a compulsory payment of money, by those who bear their shares of the common burden, to the privileged person who does not bear his share., It is, in law and in fact, as much a subsidy, paid by the former to the latter, as if it were a subsidy in form and in name. The result is the same whether (1) a man pays his just tax of $10, and receives it back again, and his neighbors pay $10 more than their shares, or (2) they pay $10 more than their shares, and the ceremony of his paying $10 and receiving it back again is omitted, or (3) he and they pay their several shares, and they pay him $10. The first may be called a donation of a subsidy or bounty; the second may be called an exemption; the third may be called something else. They are three methods of doing one thing. Of the common burden that belongs to the subsidized individual and his neighbors, his share is borne by his neighbors, and he does not help them bear their shares. When a town hires money, with an agreement that the promise of payment shall not be taxed (Gen. Laws, c. 53, s. 11), there is no exemption. The town dispenses with the circuity of taking money from the lender as a tax and returning it to him as interest, and avoids the expense and risk of collecting and repaying it. When a part of a class of taxed property is exempt, the public dispenses with the circuity of taking money from the owner as his just tax, and returning it to him as a gratuity. The whole or a part of his tax-debt is collected from his neighbors. This cannot be done by New Hampshire taxation, which is an equal sharing of the public expense, and not a donation of subsidies to a part of a class of property owners out of the property of others. The direct or circuitous grant of bounties, when constitutional, is an exercise of the power of protection, the expense of which is equally divided by the tax power.

The relief to which the plaintiff is entitled is a release from so much of the tax assessed to him as is in excess of his share. Such order is to be made as justice requires. Gen. St., c. 53, s. 11. While he is not to be compelled to bear any part of his neighbors' shares, he is not to receive. for any part of his share, a discharge that would infringe their right by extorting from them what he ought to pay. An excessive abatement of his tax would put upon them a part of his duty. Such an abatement would not be less unconstitutional than his excessive assessment.

There is no general provision of the constitution or statutes exempting from taxation the property of insolvent persons, or exempting all property except what the owners would have if their debts were paid, or exempting all property that is liable to be applied to the payment of debts, on execution, or foreclosure of mortgage, or pledge. The constitution, declaring that every member of the community is bound to contribute his share of the public expense, does not exempt any property. The statutes declaring property taxable do not lay down a general rule, that from taxable property the amount of the owners' debts shall be deducted, and that their taxes shall be assessed upon the bal-

ance, as if their estates had been settled in a court of probate or bankruptcy. It is specific property that is taxable. This has been the rule of the province and state. The assessment of railroads is an instance of the application of the rule. *Railroad* v. *Prescott*, 47 N. H. 62, 67, 69. "No state has ventured to establish the principle of permitting its visible, tangible property to escape taxation, relying solely on a tax imposed on the individual on the basis of his estimated wealth in excess of his debts." *Taylor* v. *Secor*, 92 U. S. 575, 605. What exceptions there have been, or now are, in this state, and what constitutional ground they stand on, are questions not raised by this case.

The rule may have been adopted upon various considerations. Governments are organized for the protection of persons and property, and the expenses of the protection may properly be apportioned among the persons protected, according to the value of their protected property. *Tappan* v. *M. N. Bank*, 19 Wall. 490, 501. Seeing the debtor and his property receive the benefits of government as if he were not a debtor, the legislature may have thought it equitable that he and his property should bear their share of the cost of these benefits as if he were not a debtor. They may have thought that his share would not be ascertained if an amount of his property equal to his debts were exempted from its proportion of the expense incurred for the protection and benefit of that property as well as similar property of others who are not debtors, and that such an exemption would be an unconstitutional transfer of his burden, or a part of it, from him to his neighbors. They may have deemed it unwise, in that manner, to compel the non-speculating class to pay bounties to those who venture beyond their means, as an encouragement of speculation. The ascertainment of what property all persons, partnerships, and corporations would have if their debts were paid, as a basis of taxation, may have been considered impracticable and demoralizing. It would require assessors to investigate matters often too intricate and obscure to be speedily or accurately unravelled, and would offer a reward for the fabrication of fictitious debts and fraudulent evidence, by which taxation could easily be made extremely unequal. The exemption of an amount of property equal to the owners' debts, if they had so much, might sometimes, in some towns, make the public expense a crushing burden for some or all of those upon whom it would fall. Half of the property in a town might be exempt, although benefited by the expenditure of taxes as much as the other half that paid the taxes. Upon whatever reasons the legislature have acted, and however sound or unsound their reasons, the general rule adopted by them for taxing specific property, instead of taxing such balance as would be left after payment of the owners' debts, is not a violation of the constitution: and the legislature did not intend to submit the question of its justice to the court in tax appeals.

In this state, the taxability of money at interest is not an open judicial question. Whether the assessment of money at interest is a process of ascertaining the lender's or the borrower's just share of the public expense, or an exceptional, double, or otherwise wrongful tax-

ation of the borrower ( *S. & L. Society* v. *Austin,* 46 Cal. 415, 483–487, 492–498 ; *People* v. *H. S. & L. Society,* 51 Cal. 243 ; Cooley Taxation 159), permitted, not required, by an erroneous constitutional construction established by legislative usage and judicial recognition, we need not inquire.    If the assessment of a creditor for his interest-bearing loan of money is, in effect, either a double taxation of his debtor, or a taxation of the debtor for property which, by conveyance or destruction, has ceased to be his ; if all borrowers of money would pay, in interest, the tax of the money they hire, in case all taxable loans were found and taxed, as tenants pay, in rent, the tax of the land they hire, and as towns pay the tax of the money they hire upon agreements to set off the tax against an equal amount of interest ; and if the taxation of promises to pay money and interest is not sustained, in principle, by the inability of assessors to find all such promises,— such taxation is sustained by the authority of precedent.    If the tax of the promises of payment that are found (disclosed in savings-banks and other banks by the publicity of the promisees' affairs, and in some other cases by other means) is an unjust burden laid upon the prom-isors ; if the injustice is increased by the whole body of promisors be-ing constrained to pay the whole body of promisees more tax (in the form of increased interest) on the promises than is paid thereon by the latter body to the public ; if the taxation of promises is unduly profitable to lenders as a class, and unduly unprofitable and oppressive to the public and other borrowers ; and if its incidental and unin-tended operation as a discrimination against punctilious tax-paying promisees, and a pecuniary reward for deceit, falsehood, and perjury, is an annual exercise of a great power in prostrating the moral sense of the community, and bringing deserved reproach upon the law as an instrument of injustice and disseminator of corruption,—the precedent is too firmly established to be overthrown by any other authority than that of making laws.    Whether the precedent is in conflict or in har-mony with the general, equitable principles of the constitution, is a question on which we express no opinion.

In this case the land is taxable to the plaintiff as it would be if, in-stead of being mortgaged to the bank, it had been mortgaged to sure-ties to idemnify them for signing the notes given by the plaintiff to the bank, in which case it would not be taxable to the bank or the sure-ties, and the value of the plaintiff's title and interest would be the same as now.    When A buys of B land in Manchester worth $10,000, being Lot No. 1, with the store thereon, and gives for it his interest-bearing note of equal value, secured by sureties, or in any way other than a lien on taxable property, A is taxable for $10,000 in the land, and B for the $10,000 called money at interest.    When C buys of D land in Manchester worth $10,000, being the adjoining lot No. 2, with the store thereon, and gives for it his interest-bearing note of equal value, secured by a mortgage lien on the lot, no property is destroyed or exempted by the lien, and C is taxable for $10,000 in the land, and D for the $10,000 called money at interest.    Gen. Laws, *c.* 53, *ss.* 2, 6.

If there is no creation of taxable property in the transaction of C and D, there is none in the transaction of A and B. And if no taxable property would be destroyed by C conveying No. 2 to D in payment of his debt, no taxable property would be destroyed by A conveying No. 1 to B in payment of his debt. Money at interest being a class of taxed property, D's money at interest is not taken out of that class by his mortgage security. *People* v. *Eddy*, 43 Cal. 331, 339, 340. Both lots of land and both notes being located in the same tax district, the constitutional shares of the public expense belonging to C and D, as owners of the land and the money at interest in the one case, are equal to the shares of A and B, as owners of the land and the money at interest in the other case. Putting C's share upon A and others who bear their own shares would be a discrimination as indefensible as putting A's share upon C and others. Land and money at interest being classes of taxed property, the exemption of a part of either class would be a forced payment of money, for the benefit of the exempted part, out of the non-exempt part of the same class, and other classes. The constitution does not authorize debtors to enroll themselves as public pensioners by giving their creditors mortgage security.

Equality in the taxation of money at interest requires the mortgagee's money at interest to be taxed to somebody: the statute requires it to be taxed to the mortgagee: and he cannot also be taxed for the mortgaged land, or any part of it, or any interest in it, unless he can be made the creditor of the mortgagor for the land-tax, and authorized to collect it out of the land, or its rents and profits, or other property of the mortgagor. If the legislature can put the bank in the place of the defendant, as land-tax creditor of the plaintiff, the unexercised power of substitution is no cause for abating the tax. The useless circuity of any part of the plaintiff's tax passing through the bank on its way to the public treasury is not one of his constitutional rights. Nor is it one of those rights, that he shall owe the tax debt to the bank instead of the defendant.

If the mortgaged land were taxed to the mortgagee without recourse to the mortgagor, money at interest would be exempted for the benefit of the mortgagor. The land might as well be exempted for his benefit as the money at interest. Taxing the land to the mortgagee, and exempting the money at interest, would be a futile and frivolous attempt to conceal the mortgagor's subsidy. There is no moral or constitutional merit in an attempted concealment of his subsidy, or in an attempted concealment of the abolition of the tax of mortgage loans, either for a subsidizing purpose, or for the purpose of gaining a ground on which a demand for the abolition of the tax of other loans could not be logically resisted.

If the taxation of money at interest is a double or unequal taxation of the plaintiff and other debtors, they can be relieved by the legislature ; if it is not, the plaintiff has no grievance. *Bank* v. *Nashua*, 46 N. H. 389, 399. For the purpose of taxation, under existing law, somebody is owner of the land, and somebody is owner of the money

at interest. If the land is not taxable to the plaintiff, it is exempt. And exemption is an expenditure of public money, not an exercise of the judicial power of abatement, or the legislative power of taxation.

If money at interest were not taxable, and mortgaged land were assessed to the mortgagee, the tax would be payable by the mortgagor, as it is now. His contract would be, as it is now, to pay the hired money, and the market price of the use of it, and not to discontinue his annual payment of the land tax. Without that bargain the mortgage loan would not be made. The person offering his note and mortgage of land to another does not ask him to assume the payment of the land tax without a consideration. Both of them understand it is to be paid by the former, directly or indirectly,—by his own act, or with means furnished by him, or out of his property. On that point misunderstanding is impossible. By their contract, the parties fairly and conclusively determine, between them, who is to be the payer of the tax, and the owner of the land for the purpose of taxation. And he is reasonably treated as holding the position of owner for that purpose whose agreement to hold it is in full force, and whose sole contention is that the entire contract, embracing his inducing and controlling stipulation not to abandon that position, was an abandonment of it. The tax is justly assessed to him who has elected to pay it, and from whom, upon his own voluntary promise, it will be legally due whether assessed to him or the mortgagee. Its abatement would uphold his repudiation of his agreement, and add his tax obligation to the public burden.

An abatement in this case would be contrary to an elementary principle of economic law. They who buy, pay for, and consume the manufactured articles, whiskey and tobacco, have no difficulty in understanding that a part of the price which they pay is the tax assessed on those articles to the manufacturer, who would not carry on the business of manufacturing them for sale if his price did not include the tax as well as the cost of materials, the cost of manufacture, and a profit. By natural law, he is a collector of the tax, and the consumers of his products are payers of the tax. He is a payer of the tax, and not a collector of it, so far as he is a consumer of the thing taxed. The taxation of those articles generally leaves every one to tax himself, since his purchase and consumption of them are ordinarily a matter of choice and not of necessity. The tax thus paid by the consumer is a discouragement of the use of the taxed commodity: and upon the principle of discouraging and diminishing the consumption of whiskey and tobacco by a so-called tax which increases the price paid by the consumer, the protective power of government is exercised.

If all bread and meat were bought of bakers and butchers, and they were taxed ten cents a pound on what they sold, the consumers would readily perceive that they were the payers, and that the bakers and butchers were collectors, of the tax. The business of selling bread and meat would not be carried on if the tax and other expenses of the

business were not paid by the consumers.   One who knows that real estate owned by him will be taxed to him, does not buy real estate, or erect a building, for the purpose of making a profit by letting it to tenants for rent, unless he expects the rent will be more than enough to pay the annual tax and other expenses of the property.   If he engages in that business, he undertakes to collect the tax from his tenants, and to guarantee their payment of it; and he relies upon his ability to collect from them a rent that will include the tax, and the cost of collection and guaranty, as well as the other expenses, and a balance of net income.   His tenants are the payers of the tax, although it is assessed to him and collected of him by statute.   He collects it of them by authority of the higher law which makes the tax of whiskey, tobacco, and imported goods a part of their market price, and causes the land tax, assessed upon the landlord, to enter into the market rate of rent.   As a tax on production and importation is a part of the cost paid by the consumer, so the annual tax of land is a part of its annual cost paid by the occupant and user.

It is the consumer or user who pays the tax laid upon the manufacture, production, or importation of personal property, whether the tax is assessed by statute to him, or to the manufacturer, producer, or importer.   It is the rent-paying tenant of a house and house-lot who pays the tax of the building and land which he occupies as the home of his family.   The tax may be assessed by statute to him or to the owner.   In either case, it is paid by the tenant.   To him it is a matter of indifference whether he pays it, under the name of a tax, directly to the official collector, or, under the name of rent, indirectly through his landlord.   If he paid it directly, under the name of a tax, by force of a general statute, he would have so much less to pay indirectly under the name of rent.   Whether the whiskey and tobacco taxes shall be assessed to the consumer or to the manufacturer, whether the duties on imports shall be assessed to the consumer or to the importer, and whether the land-tax shall be assessed to the tenant or to the landlord, are questions of convenience and expediency, and not of equality and legal right.   Legislative power may reënact the law of nature by assessing the taxes of manufactured and imported goods upon the consumer and the land-tax upon the tenant, or assess the former upon the manufacturer and importer and the latter upon the owner, and leave the law of nature, without reënactment, to employ the manufacturer, importer, and landlord as tax-collectors.   The legislature have not attempted to resist the power by which a just real-estate tax, falling indirectly upon tenants of the taxed property, is comprised in their shares of the public expense ; and between that power and the constitution there is no conflict.

Whether the public expense is more justly and wisely divided by an inevitably unsuccessful effort to tax all property, or by the taxation of some class or classes of property that can be easily, equally, and certainly taxed, and the tax of which is equitably collected for the public from all classes of people by the higher government, is not a

judicial question. If there is a class of property, the tax of which, by force of the natural law of tax distribution and equalization, would be eventually paid in just proportion by the whole community, the common burden may be wholly put upon that class. The non-assessment of other classes of property would not be an exemption of any class of people. And this accords with the conclusion, that money at interest being a class of taxed property, and land being another class, an abatement of the plaintiff's tax would be an exemption.

One of the arguments for an abatement is, that the mortgagee can take possession, collect the rents now due, and compel the plaintiff's tenants to become tenants of the mortgagee or quit the premises. It does not appear that this case is an exception to the rule of tax-collection by natural law, under which rent-paying tenants pay the tax of the premises they occupy. The plaintiff, being a landlord and collecting the rent from his tenants, collects the tax, which is a part of the rent. And there is no more reason for allowing any part of the tax thus collected to be retained by him, than for allowing it to be retained by the official collector when he receives it from the plaintiff. If the plaintiff should return a part of it to his tenants, or refrain from collecting a part of it, they would enjoy an exceptional tax exemption. As payers of the tax, they have no interest in the question whether the premises are mortgaged or not. They are entitled to no abatement on the ground that their landlord is the mortgagor; and they would be entitled to none if he were the mortgagee. To the plaintiff, through whom they pay the tax, it is immaterial whether it passes from his hands to the official collector directly, or through the hands of some other person indirectly. In collecting it, the plaintiff does not act upon the distinction between the equity of redemption and the rest of the property. He does not abate all of the tax, except so much as should be assessed upon the equity; and the public, collecting it from him, is not bound to act upon the distinction which he disregards. Indiscriminately collected by him for the public, it may be indiscriminately collected of him by the public, to whom it equitably belongs. If he were allowed to retain all of it, except so much as on a division of the assessment would be laid upon the equity, he would receive from his neighbors a pension equal to the tax of $10,000.

Assuming the position of landlord and collector of the tax of the whole estate, before he made the mortgages, the plaintiff assumed the position of owner of the whole estate for the purpose of taxation. When he became mortgagor, he did not cease to be landlord; and the tenants did not cease to be his tenants. He continues to exercise the right of a landlord—collector of the rent which includes the tax. His tenants pay the tax to him as they did before the mortgages were given, and as they would if the mortgages were discharged. The mortgages have not suspended the relation of tax-collector and tax-payer, which is a part of the relation of landlord and tenant. The mortgages have neither interrupted the plaintiff's collection of public revenue from his tenants, nor bestowed any of it upon him as a subsidy from the public.

While the injustice of abating a tax collected by the plaintiff is exhibited in his position of landlord and tax-collector, the application of the general principle does not depend upon that position. If he were his own tenant the result would be the same. If he were occupier in person he would be entitled to no abatement, as his tenants are entitled to none. He would be the payer of the tax, and the owner of the land for the purpose of taxation, by virtue of the natural law which levies the tax upon him who has the beneficial use and occupation. The tax, justly collected of him by that law, would be justly collected of him by the statute; and an abatement of any part of it would be a compulsory payment of a bounty to him by his neighbors. The mortgage is no more cause for making them his tributaries when he is occupier of the land, and payer of the tax and other expenses comprised in rent, than when he is landlord and rent-collector.

A tenant for life, being either landlord and collector of the rent (which includes the tax of the remainder as well as the tax of the life estate), or occupier of the land, is taxed for the land, and not merely for his life estate. *Peirce* v. *Burroughs*, 58 N. H. 302, 304; *Deraismes* v. *Deraismes*, 72 N. Y. 154, 158. A holder of a defeasible title having the income or use of the land, may be taxable for the land, and not merely for his title. An ordinary land tax is an ordinary expense and burden of the land, and is naturally borne by those who have the benefit of the land. Exceptional cases need not be considered because this case is not shown to be exceptional. The positions of rent-paying tenants, tenants for life, and holders of defeasible titles, as tax-payers, are illustrations of the rule that title is not the test of taxability. Such persons, enjoying the product out of which the land tax may be taken, may be regarded, for the purpose of taxation, as the owners of the land, although the value of their title may be much less than the value of the land. The justice of taxing a piece of land to its tenant for life, who draws a great annual income from it, is apparent: and he is none the less taxable for the land when his term has so nearly expired as to have no substantial value. He is the owner for the purpose of taxation, though not for every other purpose. The plaintiff's first proposition, that one can be taxed only for what he owns, is at variance with the natural law by which the ordinary taxes, like other ordinary expenses of land, are chargeable upon its rents and profits, and eventually fall upon the occupier, who may be a tenant for life, or a tenant at will. The land-tax payer of final resort is, for the purpose of taxation, the real, ultimate owner of the land.

The plaintiff takes the rents and profits, and appropriates them to his own use. He is no more bound to deliver them, or account for them, to the mortgage creditor, than he would be if that creditor were not mortgagee. *Cavis* v. *McClary*, 5 N. H. 529, 531; *Great Falls Co.* v. *Worster*, 15 N. H. 412, 434; *Northy* v. *Northy*, 45 N. H. 141, 144. If he delivers them to the bank, they go to pay his debt, as they would not if they were the property of the bank. If he

occupies the land in person, he owes the bank no rent for the use of it. On the question of the justice of requiring him to pay the tax out of the rents and profits in his hands, the mortgage is irrelevant. The interest which he pays the bank does not entitle him to tribute from his neighbors, including those who pay interest to the same bank, or other creditors, on debts not secured by liens on taxable property.

A mortgagee, entering and taking the rents and profits, accounts for them to the mortgagor (*Brown* v. *Simons*, 44 N. H. 475, 478; Gen. Laws, c. 136, *ss.* 8, 9, 10), because they are the property of the mortgagor; and they go to pay his debt, as they would if taken by him, and delivered by him to the mortgagee. The mortgagee in possession, paying the land tax out of the rents and profits, pays it out of the mortgagor's property. In his account, he gives the mortgagor credit for the rents and profits, and charges him with the tax. It is immaterial whether the tax is paid out of the rents and profits by the mortgagor or the mortgagee. A tax necessarily paid by the mortgagee for the protection of the estate, and not paid to him by a set-off of rents and profits, or in some other way, is added to the mortgage debt. *Brown* v. *Simons*, 44 N. H. 475, 477. In such a case, the tax, which was a debt due from the mortgagor to the public, becomes a debt due from the mortgagor to the mortgagee, and is paid, on foreclosure or redemption, like any other part of the mortgage debt. This is necessarily so because the mortgagee is a creditor, justly entitled, by contract, to the payment of the original debt, without deducting from it the expenses of the land; and the land tax is an expense of the land. By the exchange of tax creditors, the debtor does not gain a constitutional basis of taxation.

Besides taking all the rents and profits, the plaintiff uses all the land as a mortgage means of procuring credit. In his judgment, the value of this use outweighs the disadvantage of the encumbrance. If there is a balance of advantage, it is no cause of exemption. If there is no such balance, the credit-producing use, which he chooses to make of the whole land because he considers it a profitable use, is no cause of exemption.

However much the land may rise in value, and however much net profit may be derived from its use and income, the gain accrues to the plaintiff. The bank is entitled to nothing but payment of the mortgage debt. For the purpose of profit and loss—the purpose of speculation—the plaintiff is owner; and his ownership for that purpose is some evidence of his ownership for the purpose of taxation.

Should the time ever come when a just tax, assessed upon this land, cannot be paid out of its income or beneficial use, that fact can then be offered in evidence on a question of abatement. For a purpose of speculation, or other object as satisfactory to the plaintiff as a production of income, he chooses not to apply the land to the payment of the mortgage debt. But land unprofitably used, or unoccupied and held for speculation, is not thereby exempted from taxation. The mortgage

debt is a preferred claim, payable out of the land when paid in no other way; but, among preferred claims payable out of the land, the land-tax debt, due to the defendant, is entitled to priority.   Between the defendant, representing the public on one side, and the plaintiff and the bank on the other side, the tax is justly collectible by a tax sale of the land.   So collected, it is paid from the mortgagor's property when sufficient land is left for the mortgage debt, and when that debt is satisfied, voluntarily or compulsorily, out of any property of the mortgagor.   When payment of the tax by the tax sale does not leave land enough for the mortgage debt, and that debt is not satisfied out of any property of the mortgagor, it remains a debt so far as it is unpaid; and the payment of the tax debt out of the land is, for the mortgagor, an exchange of one tax creditor for another.

It is not constitutionally necessary that the name of the owner of this land shall appear in its assessment.   Had the name been legally omitted, the plaintiff would not be entitled to an abatement to prevent a sale of the land for the payment of its tax.   If for the purpose of taxation he is the owner of the land, he cannot object to the defendant's appropriation of it to the payment of the tax.   If he is not the owner for the purpose of taxation, he is not the owner for the purpose of preventing such appropriation.   The practical oppression of which he complains is not the formal assessment of the tax to him, but the liability of his property and himself for the payment of it, enforcible by legal process.   If it could be legally collected only by a sale of the land, the right of any interested party to have it collected in no other way would be maintained.   But the court, performing the duty of making such order as justice requires, would not be authorized to decree, by an abatement, that a part of the tax of this land, justly collectible from the land itself, should not be collected from it, but should be collected from the other taxable property of Manchester.   An unequal division of the public expense is not taxation.

There are many kinds of liens and encumbrances, and of legal titles and equitable interests: and a division of the tax of a piece of property, real or personal, into two parts, and an assessment of the parts to different persons, is not required by every lien and encumbrance to which the property is subject, or by every limitation of its ownership.   When the title of real estate is so encumbered by attachments or mechanics' liens, by testamentary obligations for the support of legatees, or by dower and homestead rights of the owner's wife and children, that his equitable, exclusive, personal interest is reduced to a nominal value, his ownership, essentially modified for many purposes, is complete for the purpose of taxation.

In some cases, a creditor-bailee of a chattel has the remedies of an owner of it; and for the purpose of maintaining his equitable rights, he is regarded as the owner in a special sense, even against him who is the owner in the general sense.   As boarding-house keeper, agister (Gen. Laws, *c.* 139, *ss.* 1, 2), workman *( Towle* v. *Raymond, ante* p. 64), innkeeper, carrier, or pledgee, having the possession, the right of

possession, and a lien for the payment of a debt, he is said to have a special or qualified legal property, as well as an equitable interest, in the chattel. While the amount of his equitable interest may be the amount of a debt much less than the value of the chattel, he may be so far constructively invested with the entire legal title as to have the remedies of an absolute owner for the purpose of obtaining payment of the debt secured by the lien. In contemplation of law, he is owner of the whole chattel for a special purpose, and there is another owner of the whole chattel for other purposes. The remedial title of the creditor and lien-holder excludes him from such an ultimate ownership for the purpose of paying an amount of tax as would, if vested in him, be equivalent to a loss of an equal amount of the debt secured by his lien. His ultimate ownership for the purpose of taxation would, to the extent of the tax payable by him as owner of the chattel, make his lien not a security of the debt, but a discharge of it. In a mortgage lien, registry of the mortgage is a substitute for possession of the property. The mortgage is not a discharge of a part of the mortgage debt equal to the whole or any part of the annual taxes of the mortgaged property.

A mortgage of land creates a preferred right of the creditor to payment of the mortgage debt out of the land, if it is not paid in some other way; and for the maintenance of his right of payment he has the remedies of an owner of the land. His legal title of the land is special, defeasible, and technical. It is equitably limited by the remedial purpose of obtaining payment of the debt. From this purpose it derives its legal character. For the purpose of his remedy, the creditor is treated as the owner of the land; but for other purposes the law looks beyond the form of the conveyance to the real nature of his interest. For other purposes than the remedial one, he is not the owner until, by foreclosure, he takes the land in payment of the debt, and ceases to be mortgage creditor. *Southerin* v. *Mendum*, 5 N. H. 420, 429, 430; *Ellison* v. *Daniels*, 11 N. H. 274–280; *Great Falls Co.* v. *Worster*, 15 N. H. 412, 434, 444; *Pierce* v. *Duncan*, 22 N. H. 18, 20. Ownership for the purpose of taxation is retained in the mortgagor, not only by the special understanding of the parties on that subject, but also by the debtor's liability to pay the debt, which would not be wholly paid nor wholly payable, if, by reason of that ownership being transferred to the creditor, the land-tax or any part of it were payable by the creditor without recourse to the debtor or his property. The right of the creditor to payment of the debt makes the tax payable, between him and the debtor, out of the property of the latter, and prevents the former from becoming, by virtue of his mortgage security, the owner of the land, or of any interest in it, for the purpose of taxation. His ownership for the purpose of remedy, and his ownership for the purpose of taxation, are incompatible. In this case, the land being wholly taxable to the plaintiff, unless a taxable interest passed by the mortgages, the question is between him and the bank; and the relation of debtor and creditor existing between them is decisive of that question.

The plaintiff's second proposition, that he owns only the equity of redemption, is unsound. For some purposes he owns only the equity, and for other purposes he owns the land. The question is, whether he owns the land for the purpose of taxation. He owns it for that purpose, for reasons already given, and also because he owns it for the purpose of enjoying the governmental protection to which the land-owner is entitled. As owner of the land, he profits as much by the expenditure of money raised by taxation as he would if his debt to the bank were not secured by a lien on the land, and as much as he would if he were not a debtor.

In the supposed case of A buying lot No. 1 of B, on credit, without a mortgage, and C buying lot No. 2 of D, on credit, with a mortgage of the lot to secure the payment of the price, when the value of each lot is equally increased by taxes spent for roads, schools, police, and protection against fire and mobs, and for all the protection and benefits received from government, the gain belongs equally to A and C. D is entitled to no more than B. The maintenance of the value of each lot, so far as it depends upon the public expense defrayed by taxation, inures equally to A and C. It equally enables each to pay his debt. They equally enjoy the expense by which the public maintains the means of exercising the right and performing the duty of payment. In law and in equity they are equally payers of the shares of that expense belonging to lots equally applicable, but, for reasons satisfactory to the debtors, not applied, to the payment of debts. If the abolition of taxes, and the consequent discontinuance of governmental protection, destroyed the value of both lots, the loss would fall equally on A and C. Each would still be a debtor for the price. B might lose his debt by the insolvency of A and his sureties, caused by the want of protection; and D might be paid out of other property of C. If D lost his debt, his loss would be, like B's, a creditor's and not a land-owner's misfortune. The difference between the value of the lots under the tax laws, and their value without those laws, belongs to the debtors.

In an action brought by C, as owner of the whole estate, against this defendant, to recover the value of the store on lot No. 2, destroyed by a mob (Gen. Laws, c. 37, s. 12), the worthlessness of his equity of redemption is no defence, and no mitigation of damages. Such a case presents the question of the mortgagor's ownership as one arising between the public, of the one part, extending to him the right of protection, in consideration of his obligation to contribute his share of the cost of the right, and the mortgagor, of the other part, bound to contribute his share of the cost, in consideration of his being as much entitled to the protection of the rest of the estate as to the protection of the equity of redemption. When, in that action, C recovers a judgment for $5,000 against the city, a share of the damages and costs is paid by A as the owner of lot No. 1. And when A recovers a judgment of the same amount against the same defendant for the store on lot No. 1, destroyed by the same mob, a share of A's indem-

nity is paid by C as owner of No. 2. He is not exempted from contributing, as owner of No. 2, to the expense of the public protection, which, as the owner of that lot, he shares equally with the owner of No. 1. As owner of No. 2 he has the right of equally enjoying the common benefit and security for which government is instituted, and the reciprocal obligation of equally bearing the expense. An assessment to A of the share of expense belonging to No. 1, and a release of C from any part of the share belonging to No. 2, would not be taxation.

B and D are creditors entitled to liens by attachment. By that remedy they can intercept the payment of the judgments recovered by A and C, and acquire liens on the lots as security. D is also entitled to the maintenance of his mortgage lien, and can avail himself of that remedy for obtaining payment of his claim. If B and D exercise their rights of intervention for payment of their claims, the rights of A and C as owners of the lots are equal. If there is no intervention, the rights of A and C are equal. As land-owners, they have equal interests to be promoted by public expenditures; they equally need governmental protection; they are equally entitled to it; and they are bound to contribute equal shares of its cost.

When a person who has been a mortgagor stands in need of relief, he receives as much support from the public as he would if his debts had not been secured by mortgage. In ascertaining from what part of the state his support shall be received, it has been held, the value of his equity of redemption, and not the value of the land, is to be considered. *New London* v. *Sutton*, 2 N. H. 401; *Pembroke* v. *Allenstown*, 21 N. H. 107, 115. This doctrine would be erroneous if it were not consistent with his ownership of the land for the purpose of taxation. Property so held as not to be an element of pauper settlement is not, on that account, exempt from its share of the public burden. For the purpose of taxation, the ownership of the land occupied by the plaintiff's tenants is vested in them as well as in him, though they have not so much interest in it as he for the purposes of pauper settlement, sale, devise, descent, dower, insurance, speculation, receiving compensation for land taken for public use, and enjoying various benefits of government. When it is said that one has a right not to be removed, when a pauper, from a town in which he has gained a settlement, it is not understood that the right cannot be changed or extinguished by statute, or determined in a suit between municipal branches of the government, without notice to him, or that his settlement is a private and not a public right. *Exeter* v. *Stratham*, 2 N. H. 102, 105; *Lisbon* v. *Bath*, 21 N. H. 319, 327. The abolition of pauper settlements would not affect the ownership of mortgaged property for the purpose of taxation. If taxable ownership and pauper-settlement ownership of property were inseparable, large amounts of property would have no owner for the purpose of taxation. And if ownership for every other purpose were ownership for the purpose of taxation, the insurable interests of mortgagor and mortgagee are so extensive that

large amounts of mortgaged property would be liable to the unequal apportionment of the public expense called double taxation.

An argument for abatement is based on the taxation of savings-banks. When, for a necessity or convenience of agency, property is held in trust, with a distinction between the legal title of the agent or trustee, and the equitable title of the principal or beneficiary, the share of the public burden belonging to the owner of the property is assessed either to the agent or the principal,—to the legal or the equitable owner. The division of the title into legal and equitable parts is not a multiplication of the property. When property bears its share of the public burden, there is not another equal share to be borne by the evidence of the ownership of the property. The owner of a farm does not pay two taxes, one on his farm and another on his deed, although the deed is property of value as evidence of his title, and is protected as property by civil and criminal process. And when he has left the farm in trust for his widow and children, and the trustee, holding the legal title without any beneficial interest, pays the farm tax and expenses out of the farm income, and pays the rest of the income to the widow and children, a second tax of the same amount is not assessed on the equitable title of the widow and children. For the purpose of taxation, the legal title of the trustee and the equitable title of the widow and children are not more than the whole title, legal and equitable, which the testator had in his lifetime. And if the testator, dividing the equitable title and beneficial interest into four shares, gave two shares to his widow and one share to each of his two children, directed the trustee to issue to them certificates as evidence of their respective rights in the trust property, and made the certificates assignable and available as personal property, like certificates of corporation stock, and if this disposition of his property were authorized by law, the united titles of the trustee and the widow and children would not be more than the title of the testator. And the law of taxation and the justice of the case are the same when the trustee is called a corporation, and the trust property is not a farm. The corporate ownership, like the corporate existence, is a legal fiction. Property held by an incorporated trustee is no more a subject of double taxation, than it would be if held by a trustee existing in fact. For the purpose of taxation, it is immaterial whether the trustee is or is not incorporated. The property of depositors, held in trust for them by a savings-bank, incorporated or unincorporated, is not taxed twice, once to the bank, and again to the depositors, nor once to the bank in one form, and again to the bank in another form. *Bank* v. *Nashua*, 46 N. H. 389, 398, 399 ; *Bank* v. *Portsmouth*, 52 N. H. 17, 26, 27 ; *Simpson* v. *Bank*, 56 N. H. 466, 470, 476–478. Property held in trust by an unincorporated trustee is not doubled in value by the division of the ownership into actual and ideal parts ; and the property of depositors or stockholders, held in trust for them by their corporation, is not doubled in value by the imaginary existence of the trustee. A mortgagee in possession holds the estate with

duties and obligations analogous to those of a trustee. *Brown* v. *Simons*, 44 N. H. 475, 478. His technical, formal, and alternative title is of the whole estate, and not merely of a part equal to the mortgage debt. The value of the land is not doubled by the mortgage : and a mortgage or trust that does not double the land in value, does not double it for taxation. But equality in the taxation of trust funds, and other property not held in trust, does not justify the exemption of mortgaged land.

*Case discharged.*

STANLEY, SMITH, and CLARK, JJ., did not sit: the others concurred.