Grafton, }
May 5, 1908. }

CANAAN v. ENFIELD VILLAGE FIRE DISTRICT.

Property of the Enfield Village Fire District situate in Canaan, but used in the construction or operation of the water-works of the district, is exempt from taxation.

ASSUMPSIT, for taxes assessed against the defendants. Transferred from the November term, 1905, of the superior court by *Chamberlin,* J., upon an agreed statement of facts.

*George F. Morris* (with whom were *Batchellor & Mitchell, John M. Mitchell,* and *James B. Wallace*), for the plaintiffs. The decision in *Newport* v. *Unity,* 68 N. H. 587, rests on the special provisions of the New Hampshire statutes as follows: "Buildings, mills, carding machines, factory buildings and machinery, wharves, ferries, toll-bridges, locks and canals, and aqueducts any portion of the water of which is sold or rented for pay, are taxable as real estate." P. S., c. 55, s. 3. The language of the statute is plain and unambiguous. No distinction is made between water rights owned by private individuals and corporations, and those owned by municipal corporations. Therefore by the plain provisions of the statute "all aqueducts any portion of the water of which is sold or rented for pay are taxable as real estate."

This clause first appears in the revision of the statutes made in 1867. It is evident that the commissioners considered the real estate of water companies taxable by the general provisions of the statutes, and that the foregoing clause was added for the purpose

of removing all doubt about the aqueducts of such companies. Certainly, to hold that the aqueducts of water companies are taxable, and that the real estate of which the aqueducts are a lesser part is not taxable, would be anomalous.

As we have said, no distinction is made as to the ownership of aqueducts, provided a portion of the water is sold or rented for pay. Such was the fact in the Newport case, and such is the fact in the Canaan case. If the plain language of the statute is to be limited it must be by some other provision.

Section 2 of chapter 55 is relied on as working a limitation of section 3. It provides that "real estate of the United States, state, or town used for public purposes, and almshouses on county farms" are not taxable. As was said in the opinion in *Newport* v. *Unity*, this statute antedates any statute enabling towns to acquire extra-territorial property, either by purchase or eminent domain. Hence, in exempting the property of towns used for public purposes, the legislature could not have had in mind that it was exempting property owned by one town which is situated in another town. It must be assumed that the intent of the legislature was to exempt property such as it would be useless and unnecessary to tax (town-houses, etc.), or such property as is mentioned in Cooley on Taxation (3d ed., *vol.* 1, *p.* 263), under the head of "Implied Exemptions": "Some things are always presumptively exempted from the operation of general tax laws, because it is reasonable to suppose they are not within the intent of the legislature in adopting them. Such is the case with property belonging to the state and its municipalities, and which is held by them for governmental purposes."

Property in one town belonging to another town does not come within the reason of this rule, because it is not in the same taxing district. The taxation of such property, instead of imposing the burden of levying an extra tax on other property of the town with which to pay that tax, reduces the rate to all other taxpayers in the township. As we think it must be conceded that it is within the power of the legislature to tax public property, and as the only reason for not doing so is that it is a useless form, there can be no implied exemption of extra-territorial property to counteract the express provisions of section 3, quoted *supra*.

*Newport* v. *Unity* was decided in 1896. The act exempting the property of the defendant district was passed in 1903, after an interim of nearly seven years, during which there were several sessions of the legislature. There was ample opportunity to make the statute plain if the construction in *Newport* v. *Unity* was not sound, or if it did not meet with legislative approval. "In the passage of each act, the legislature must be supposed to have had

in mind and contemplation the existing legislation on the same subject, and to have shaped its own enactments with reference thereto." Black Interp. Laws, s. 86.

That the legislature of 1903 had in mind that the property of the Enfield Fire District in Canaan would be taxable under the general laws, unless made exempt by special act, is clear, else there was no necessity for inserting the exemption clause in the Enfield act. There was no attempt or purpose manifested by the legislature of 1903 to change what it must have considered a settled law of the state when the subject was under consideration. But for reasons not clearly manifested, it undertook to take the Enfield District out of the general rule. Again, if by the general laws extra-territorial holdings of towns were exempt or supposed to be exempt from taxation, why, prior to the decision in *Newport v. Unity* in 1896, did the legislature by special act exempt the city of Concord in 1891 (Laws 1891, c. 261, s. 6) and the Whitefield Village Fire District in 1893 (Laws 1893, c. 167, s. 10)?

In *Niagara Bridge Works v. Jose*, 59 N. H. 81, the interpretation of a special act of July 24, 1871, was under consideration. It was claimed by the plaintiff that there was a strong presumption that the legislature did not intend by the special act to exempt the defendant from the operation of the general statute. We quote the following from the opinion of *Stanley*, J.: "If, by the act of 1871, neither the power to contract debts was enlarged, nor the penalty removed, it is difficult to conceive anything gained by its passage. No new right was conferred, nor was any liability modified. The rights and liabilities of the corporation and the directors were the same after as before its passage. But this view is not correct. The act of 1871 was passed for the purpose of effecting a change in the existing law, so far as it related to this corporation. . . . When the act of 1871 was passed, the directors were amenable to the general law, and they could not exceed the limit fixed by section 4 without becoming liable. If this act is to have any effect, it must be to permit that which was before prohibited; and if this is its effect, it renders section 4 of chapter 135 inapplicable to this corporation, and as to it, it was a waiver of the general provisions of law applicable to all corporations."

*Guthrie County v. County*, 34 Ia. 108, is also in point, and supports our theory of the statutory construction to be placed on the Enfield act and existing law. It is there held that if the lands in question were not taxable by the general laws, there was no necessity for the passage of a new act. The enactment of the statute amounts to a legislative declaration that such lands were before

taxable. We believe the opinion in *Newport* v. *Unity* is consonant with the legislative intent, as gathered from the history of the several sections of the tax laws above referred to.

We believe that the maintenance of a system of water-works by a taxing district is a private enterprise, in so far as it concerns the interest of any other similar district not deriving a benefit therefrom. We believe that the exercise of such a function is only *quasi*-public and is not to be classed among those powers of towns usually spoken of as governmental. Every function of a town or taxing district must be placed either in one class or the other; and to say that a power may be of a private nature with respect to negligence suits, and governmental with respect to taxation, is to lose sight of the fact that it is ·the same power that is being exercised all the while. If the maintenance of a water system is *quasi*-public for one purpose, it is for all. It neither changes its skin nor its color. It is firmly settled by sound reason and authority· (*Morrison* v. *Manchester,* 58 N. H. 538, 550), that an exemption of property which should bear its share of the public burdens is equivalent to the imposition of a corresponding tax on other property.

Private property can be taken for public use in but two ways,— by right of eminent domain and by taxation,—and only upon just compensation being made. The protection afforded the citizen by the government is usually conceded to be the just compensation provided by the constitution for all private property he is required to surrender in the shape of taxes. It is probably true, as maintained by the defendant, that exact equality in the distribution of the public burdens, and especially of such as are local, cannot be attained. The individual who lives just beyond the limit of a sidewalk does not enjoy quite the same advantages from its maintenance as his more fortunate neighbor whose house is located beside the walk.

The legislature, in fixing the limits of taxing districts, whether county, town, fire or water districts, considers the advantages to be returned and attempts to equalize them, having regard to the purposes for which the taxing district is formed. We would not expect to find territory which is not adjacent included in one township, or a rural neighborhood united in a fire district with a village. That the legislature may change the limits of taxing districts as exigencies require, is undisputable; but so long as district limits remain fixed, it is indicative of a legislative understanding that there exists a community of interests among the citizens. Beyond its limits the citizens owe allegiance to, and come within the protection of, some other taxing district. Both districts may have a common interest in that they belong to a

larger or superior district; but even then the only interest of each is to bear its just proportion of the burdens of its superior. All taxing districts are separate and distinct in their acts, and, it may be, in their needs. One may require macadam roads, and another electric lights and a fire system. One may require a two per cent tax to keep in repair its highways, and another a five per cent tax. Except in so far as their acts affect the state at large, the one is not interested in the concerns of the other.

We concede that the inhabitants of the state at large have an interest in the preservation of the health of the inhabitants of every locality, and that furnishing a supply of pure water to a municipal district is in a certain sense doing a service to the general public. Nevertheless, if a taxing district can maintain the health of its citizens by some other method, the establishment of a municipal water-plant may not be necessary and is never compulsory. As far as known, no legislature has compelled a village, against its wishes, to construct a system of water-works. A water system is therefore not essential in the machinery of government. It is not a governmental function in the sense in which the term is ordinarily used, but the private enterprise of a taxing district, employed for the protection and convenience of its own citizens, which incidentally renders a valuable service to the general public.

Admitting that, in a sense, a district is performing a service to the general public by protecting its members from pestilence and disease and their property from fires and conflagration, it does not follow that the legislature has a right to single out one taxing district and demand that it pay the city of Manchester $500 for the support of municipal water-works therein, and another with a demand that it pay $1,000 for the maintenance of the highways in Concord. *Opinion of the Court,* 4 N. H. 565, 570. The service rendered by each taxing district outside of the welfare of its own citizens is to the general public, and not to some other like district. Therefore, if financial aid is required for carrying on any work, either governmental (maintenance of highways) or *quasi*-public (maintenance of electric lights), it is to the state that application for such aid should be made. A fair illustration of this principle is found in numerous acts granting aid to small towns for the maintenance of highways. To prove that the maintenance of a water system is a governmental function, proves too much for the purposes of the defendant's case. It proves that they should look to the state for aid. "If the work concerns the public, its cost, in excess of peculiar local benefits, must fall upon the public according to some established rule of uniformity." *Baldwin* v. *Fuller,* 39 N. J. Law 576. The authority of the legislature

to impose on any one taxing district an unequal portion of the burden of maintaining even a governmental profit is denied. *State* v. *Jackman*, 69 N. H. 318, 331.

The question of each district bearing only its share of the public burdens is fundamental. It bears its own and its share of the county and state burdens, but it cannot be asked to bear a share of its neighbor's burdens so long as the legislature permits it to retain its individuality. The acts of every taxing district are private as respects every other district, except in so far as they are integral parts of the county or state. The question strikes deeper than that of determining whether a water system is a private or governmental instrumentality. It is the question of just compensation. It cannot be claimed that there is any such community of interests between Hart's Location and the city of Concord as that the legislature could demand a special tax of $5,000 from the latter for the support of highways in the former. The legislature has never seen fit to associate the two places together. They lack a community of local interest. Such an act would not be taxation but extortion. Neither can it be said that there is any community of interest between the town of Canaan and the Enfield Fire District. Their territory is not even contiguous. There has been no effort to associate the two on any such theory. No extra burden should be imposed on the taxpayers of Canaan for the support of the Enfield District, nor can such burden be constitutionally so imposed until there is such a community of interests as to enable . the legislature with propriety to unite the two in a taxing district. The right to maintain district boundaries may not be sacred, but the right of the individuals, within such bounds as exist, to be secure from outside invasion of their private property rights, is sacred and secured to them by the constitution.

The reasoning of the courts in the following cases is certainly entitled to some consideration: *Commissioners* v. *Laurel*, 70 Md. 443; *Cheaney* v. *Hooser*, 9 B. Mon. 330; *Manistee Lumber Co.* v. *Springfield*, 92 Mich. 277; *Wells* v. *Weston*, 22 Mo. 384; *St. Charles* v. *Nolle*, 51 Mo. 122; *Bradshaw* v. *Omaha*, 1 Neb. 16; 1 Cool. Tax. (3d ed.) 225–230.

*Streeter & Hollis*, for the defendants.

WALKER, J. The Enfield Village Fire District is a public corporation created by the legislature for the promotion of the public welfare. It was organized in 1873 under the general law then in force authorizing its creation (G. S., c. 97), and it thereby became a body politic and was invested with certain limited governmental

powers. Its essential character as a governmental agency, as contradistinguished from a private corporation, is as apparent as though the territory and the inhabitants of which it is composed had been specially designated by the legislature as a town. While its territorial boundaries are within the town of Enfield, it is, like a school district similarly situated ( *Union School District* v. *District*, 71 N. H. 269), distinct from the town as a governmental agency. Within the limit of the powers conferred upon it, it may be deemed to be a town. P. S., c. 2, s. 5.

In 1903, the legislature by special act (Laws 1903, c. 221) authorized and empowered the defendant to establish water-works " for the purpose of introducing into and distributing through said fire district an adequate supply of pure water in subterranean pipes, for extinguishing fires and for the use of its citizens and for other purposes." It was also authorized to acquire by purchase or by the power of eminent domain streams and ponds, and to build canals and reservoirs for its water-works. The act did not specifically define the territory within which this power might be exercised. So far as the acquisition of the property is concerned, it was not expressly limited to the territory of the district, or to that of the town of Enfield. By section 4 of the act it was provided : " The purchase of real estate and water rights already made by said fire district, the authority voted for the issue of notes or bonds for construction of the said water-works, and the vote of the town of Enfield exempting such notes and bonds from taxation are hereby ratified and confirmed ; and all the property of said fire district used in the construction and operation of its water-works shall be exempt from taxation." Before the passage of this act the defendant purchased certain land and water-rights located in the town of Canaan, which it now uses for the supply of water to its water system ; and the question, which is presented by an amendment of the original case ( *Canaan* v. *Enfield District*, *ante*, 8), is whether this property is subject to taxation by the town of Canaan. It is apparent the legislature of 1903 intended to authorize the district to acquire real estate in Canaan, and in fact ratified and confirmed the acquisition of such property.

In behalf of the plaintiff, it is claimed that the exemption authorized in section 4 only applies to property of the defendant situated in the town of Enfield. It is argued that, though the language used is broad enough to include land situated in other towns owned by the defendant, the intention of the legislature found from the competent evidence bearing on the subject does not warrant so broad a construction. In support of this contention, the case of *Newport* v. *Unity*, 68 N. H. 587, is relied upon.

In that case it was held that real estate used for water-works

and owned by Newport, but situated in Unity, is not exempt from taxation by Unity, under section 2, chapter 55, Public Statutes, which provides that "real estate . . . is liable to be taxed, except houses of public worship, . . . schoolhouses, seminaries of learning, real estate of the United States, state, or town used for public purposes, and almshouses on county farms." The question decided in that case is not precisely the same as the one presented in this case. In that case the element of a special exemption was wanting. Immunity from the tax burden was sought under the general statute of exemptions. But if the theory of the decision is sound, it affords much support to the plaintiff's contention, that the legislature did not intend to exempt other property of the defendant than that situated in Enfield. One ground upon which that decision was based is that before 1867, when the section above quoted was first enacted, there was no statutory exemption of the real estate of towns from taxation; that at that time towns had no general authority to purchase land beyond their limits; and that "if there were, at the time of the revision of 1867, no statutes authorizing towns to purchase real estate outside their limits, it seems plain that the statute is not necessarily to be construed as exempting such property from taxation. The legislature could not have had it in mind. Hence, when they subsequently authorized towns and cities to acquire for public purposes lands in other towns, it cannot be justly presumed that they intended such property to be exempt from taxation." If it is conceded that when the legislature authorizes a town to acquire land in another town for public purposes, a general statutory exemption of public property is not intended to apply to such extra-territorial property, it may be argued with some degree of plausibility that the legislature of 1903, by general words of exemption, did not intend to exempt the defendant's property located in Canaan. If the words of the exemption had been "the real estate of the district used for public purposes," in analogy to the general language used in section 2, chapter 55, Public Statutes, which the court held in *Newport* v. *Unity* did not apply to land located without the town of Newport, the intention to exclude the Canaan property from its operation would not have been more apparent. If the comprehensive language of the general law, exempting the real estate of towns "used for public purposes" from taxation, relates only to real estate located within the territorial boundaries of the town, similar language used in a special act creating a water district might reasonably be restricted to land in the town in which the district is located, in contradistinction to land of the district located in another town. It seems to be important, therefore, to consider whether the reasoning by which the decision in *Newport*

v. *Unity* was reached is logically sound as an authoritative exposition of the legislative intention relative to the exemption from taxation of town property used for water-works purposes when located in another town.

The opinion in that case is based to some extent upon the assumption that previous to 1867 the property of towns used for public purposes was taxable, and that the legislature of that year created the exemption having reference solely to intra-territorial property, for the reason above suggested. If this assumption is sound, it affords weight to the plaintiff's contention that, upon a strict construction, the legislature of 1903 did not intend to extend the defendant's exemption to property which, though used for public purposes in Enfield, was located in Canaan, and that the express mention of the exemption, though unnecessary, was inserted out of abundant caution. If the property in question falls within the taxable class of property, it is taxable unless it is clearly exempted by express legislative language. And the court in *Newport* v. *Unity*, holding that the public water-works of Newport located in Unity fell within the general statutory definition of ratable estate, decided that they were taxable, the same as they would be if owned by an individual or a private corporation. If the court had started with the opposite assumption, viz., that being property devoted to a public use by a town the water-works were not taxable unless specially made so by statute, the conclusion that the legislature did not intend to exempt them, though located in an adjoining town, would have been less obvious. The evidence of that legislative intent would have been less convincing, and the decision would not be an authority for the proposition that, in the absence of an express legislative exemption, the property of towns used for public purposes is taxable. By applying that doctrine to the case at bar, and adopting the rule of strict construction which is observed when the question relates to the exemption of the property of private corporations or of individuals (*Portsmouth Shoe Co.* v. *Portsmouth, ante,* 222), it might not be difficult to hold that the legislature did not intend to exempt the defendant's extra-territorial property, and hence that it is taxable. But a re-examination of the grounds of that decision, it is believed, will show that they are fallacious.

When the legislature in 1867 excepted from taxable real estate the "real estate of the United States, state, or town used for public purposes," it did not thereby introduce an innovation, and withdraw from taxation property otherwise subject to that burden. It did not create a new class of non-taxable property. It merely recognized an ancient and uninterrupted rule, which would have been as controlling if it had not been put into legislative language.

" It is certainly not true that all lands in the town were ever taxed, or now are. Lands owned by the town are not taxed, and yet are not exempted by any statute ; the parsonage, school-lot, etc., are of this description. All buildings are to be taxed ; but was it ever heard of to tax a meeting-house, schoolhouse ? Were the public buildings in Exeter, Concord, Hanover, etc., ever taxed ? There are and always have been exemptions, where the statute has not expressly made any. They depend on invariable usage, growing out of the reason and nature of the thing. They are more ancient than our statutes (1770), and are not repealed except by express clauses for the purpose, or by provisions necessarily and manifestly repugnant." *Smith*, C. J., note to *Kidder* v. *French*, Smith (N. H.) 155, 157 (1807). In *Grafton County* v. *Haverhill*, 68 N. H. 120, 121, it is said : " It is therefore reasonable to consider that, however general may be the enumeration of taxable property, public property held by the state and counties and municipalities for public and governmental uses was intended to be exempted, unless the right or duty to tax it was provided for in the most express and positive terms, or by necessary implication. Cool. Tax. 172 ; Black Tax Tit. 410." In recognition of this principle, it was held in that case that county court-houses and jails were exempt from taxation, although county buildings were not included in the statutory exemption of public property.

The same principle is clearly stated in *Franklin Street Society* v. *Manchester*, 60 N. H. 342, where it is held that the constitution does not exempt church property from taxation. The court say (*p.* 349) : " So long as towns, under the act of 1791, exercised parochial functions and raised taxes for supporting and maintaining houses of public worship, those places of worship were exempt from taxation as public property by the nature of things, and not by the constitution or by statute. After the act of 1819, when towns were no longer subject to church rates, and the whole management of public worship, including its support, was left to the religious societies authorized and organized for that purpose, the natural reason for exempting this property from taxation ceased." The exemption of such property was neither secured by any constitutional provision, nor granted by any express legislative enactment ; but resulted from the very great improbability that the state, through its legislature, should intend to include its own property in a general statutory designation of taxable property. Stated otherwise, such an intention could only be found from express and unequivocal language used in the statute authorizing the tax. In the absence of language necessarily leading to that conclusion, the presumption is that the property of towns, which is properly used in promoting the public welfare, is not taxable.

And this presumption, entertained and acted upon for so many years, has established a rule of the non-taxability of municipal property, except when specially designated as taxable. It is not an accurate statement to say that the property of the state is exempt from taxation; the fact is, it does not belong to the taxable class of property enumerated in a general taxing statute; and it is not exempted from the operation of the statute, for it does not fall within it. Formal exempting language, in a legal view, is as unnecessary as it is harmless. It creates no exemption, and is at most but a mere legislative recognition of a class of non-taxable property. The idea is well expressed in *Yale University* v. *New Haven*, 71 Conn. 316, 331, 332, with reference to the exemption of college buildings in that state: " When the legislature in 1822 saw fit to formally declare that property of the United States, of the state, and of municipal governments, and ' the buildings occupied as colleges,' etc., should be exempt from taxation (Public Acts of 1822, *p.* 35), it did not alter the character of the property or the reason of its not being taxed. The declaration was not an exemption, in the strict sense of the word, as to buildings occupied as colleges and schools, any more than as to property of the United States. They were untaxed, as they had been for nearly two hundred years, without any legislative declaration, because they are not ' ratable estate '; because they had been placed in that class of property which ought not to be taxed, by virtue of a public policy too clear to be questioned, and which had been followed without any specific legislation by our government from its very beginning." See, also, *Camden* v. *Village Corp.*, 77 Me. 530; *Stiles* v. *Newport*, 76 Vt. 154; *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491, 497; *West Hartford* v. *Commissioners*, 44 Conn. 360; *Rochester* v. *Rush*, 15 Hun 239; *S. C.*, 80 N. Y. 302; *People* v. *Assessors*, 111 N. Y. 505, 509; *Black* v. *Sherwood*, 84 Va. 906; *Van Brocklin* v. *Tennessee*, 117 U. S. 151, 153.

It would seem that, both upon principle and authority, the public property of towns is not taxable unless specifically made so by clear legislative language. The presumption, which has by long and universal acquiescence become a rule of law, is against its taxability. If the court in *Newport* v. *Unity* had started with the premise that public property of a town is not ordinarily included in a general taxing statute, and cannot be taxed unless specifically mentioned, it is probable that it would not have held substantially that the water-works in question were taxable because not specifically exempted from the operation of the general statute. Treating the property as taxable unless specifically exempted, authorizes a strict construction against its exemption; while viewing it as non-taxable unless specifically designated as taxable, authorizes a

strict construction against its taxableness. In the one case the evidence would show that the legislature did not intend to exempt it from the operation of a general taxing statute; while in the other it would show that the legislature did not intend to include it in the class of property subject to taxation. And as no property is taxable in the absence of legislative authorization (Bill of Rights, *art.* 28; Const., *art.* 5; *Sunapee* v. *Lempster,* 65 N. H. 655; *Carpenter,* J., in *Boody* v. *Watson,* 64 N. H. 162, 195; *Nashua Savings Bank* v. *Nashua,* 46 N. H. 389, 392), and as the rule of the non-taxableness of public town property has been recognized for more than one hundred years, it is a reasonable, if not an inevitable, finding, that in a general statute enumerating the kinds of property subject to taxation the legislature did not intend to include the property of towns.

But it is urged that this conclusion is not unlimited, but must be confined to real estate of .towns located within their respective boundaries. It is not claimed that there is any special provision of the constitution imposing such a limitation, or that there is any statute providing in terms for the taxation of extra-territorial property owned by towns. That a town may acquire property in another town for public purposes when authorized to do so by the legislature, is not seriously controverted. In fact, the present proceeding assumes that the defendant has the title to the land in question located in Canaan and is chargeable with the tax assessed thereon. Moreover, there can be but little, if any, doubt that the legislature of 1903 ratified and confirmed the defendant's purchase of the land in Canaan. This was equivalent to an express authorization, not to acquire governmental jurisdiction over a part of Canaan, but to become the owner of the land for the purposes specified. *Schneider* v. *Menasha,* 118 Wis. 298. The contention therefore is, not that the defendant could not become the owner of the land, but that, unlike other land owned by the defendant within its own territory and held for water-works purposes, this extra-territorial land is not, and cannot be, held for public purposes within the meaning of the rule excluding such property from the list of taxable property when located within the town or district claiming the immunity; and hence it is inferred that it is taxable. But argument and discussion are unnecessary to prove that the public character of the use made of the property does not depend upon its territorial location. An imaginary line drawn around land used as a reservoir for the supply of pure water to the inhabitants of an adjoining town, and a legislative act annexing the land thus designated to such town, would not affect the character of the use, or make it public if it was not so before. The admission that such intra-territorial property would be held for

public purposes is a concession that when located extra-territorially it serves the public to the same extent, and for all practical purposes its use is the same. *Schneider* v. *Menasha*, 118 Wis. 298. When, therefore, it is settled or admitted that the public waterworks of a town are not taxable unless specially included in the tax list, it would seem to follow that the tax immunity must extend to its land used in connection therewith located in another town. In the absence of express statutory authority to tax it, legislative authority for its public use by the town indicates an intention that it should be treated as non-taxable, as in the case of intra-territorial property. In this view of the case it is not apparent why the location of the property should determine the question of its subjection to the tax laws. The authorities generally recognize no such distinction. See *Stiles* v. *Newport*, 76 Vt. 154; *Somerville* v. *Waltham*, 170 Mass. 160; *West Hartford* v. *Commissioners*, 44 Conn. 360, 369; *People* v. *Assessors*, 111 N. Y. 505, 507; *Camden County* v. *Washington*, 60 N. J. Law 367; *Hackettstown* v. *Mt. Olive*, 63 N. J. Law 191. If water-works like the defendant's are devoted to a public purpose when located within the water district, they serve the same purpose when located outside the district; and since it is conceded that in the former case they partake sufficiently of a public character to be free from the burden of taxation, no sufficient reason is suggested why in the latter case they do not in fact possess the same character. While it may be conceded that the legislature of 1903 had in mind the decision in *Newport* v. *Unity*, and that it constitutes some evidence bearing upon the question of its intention in making the special exemption of the defendant's water-works, it does not outweigh the evidence of the very general understanding for more than a hundred years, that the public property of towns is not taxable unless specially made so by clear legislative language. The act must be read in the light of that understanding, and the exempting clause be deemed a mere recognition of it.

But it is said that this cannot be deemed a correct statement of the legislative purpose, because it authorizes one town to withdraw real estate from the taxable property of another town, causing an increased burden of taxation to fall upon the inhabitants of the latter town, without any compensation therefor; that the constitutional provision of equality prohibits such a result; and that therefore it cannot be presumed the legislature has attempted to authorize it. If this contention were sound, it would afford a cogent evidentiary reason for holding that the exemption granted to the Enfield District, though broad enough to include its land in Canaan, was not intended to have that effect. A construction

that makes a statute unconstitutional in its operation is not to be adopted when it is reasonably susceptible of another and constitutional construction. *Leavitt* v. *Lovering*, 64 N. H. 607, 608. But it will not be contended that the taxpayers of Canaan, much less the town, have a right to have the taxable real estate in the town remain intact for the purposes of raising a revenue. If the state sees fit to appropriate a part of it for public purposes, the taxpayers' rights are not invaded when it is freed from the tax burden. Otherwise the lands taken by the state for a state house, state prison, state library, etc., would be taxable because, aside from their public character, they constitute ratable estate. The same practical hardship as is presented in this case would have arisen if the state had sequestered the land and water-rights in Canaan, now owned by the defendant, for a fish hatchery. It would have been withdrawn from the taxable property of Canaan, but no one would contend that the rights of the taxpayers of Canaan would be invaded thereby. Individual and private rights must yield to the public convenience and necessity. *People* v. *Assessors*, 111 N. Y. 505, 510. If the inhabitants of Canaan can successfully raise this objection in respect to the defendant's water-works located in that town, by similar reasoning the inhabitants of Enfield living outside the district could insist that that part of the water-works system located within the district should be taxed as other property in the town is taxed. If Canaan may tax the property in that town because it is obliged to furnish police protection and highways for its security and convenience, Enfield may claim the same right for the same reason with respect to the defendant's property located therein. The fundamental difficulty with such an argument is that it treats the district or precinct as a private corporation having property and doing business in the town. But the defendant in this case is a public corporation using its property for public purposes. It is as much an agency of the state as the towns of Enfield and Canaan; and so far as it holds its property in that capacity for the public benefit, it is, on principle, no more taxable for it than a county is for its court-houses and jails. *Grafton County* v. *Haverhill*, 68 N. H. 120. Unlike a private corporation, it is not engaged in a gainful occupation. It holds its property in trust for the benefit of the public—not exclusively for the private benefit of its inhabitants. Unlike a strictly private corporation or individual, it cannot charge what it chooses for its water, or refuse to furnish water to those who comply with its reasonable regulations. *Turner* v. *Water Co.*, 171 Mass. 329. In a legal sense, its property belongs to the state. The next legislature may abolish it, even against the unanimous protest of all its citizens, and turn the property over to a new district with differ-

ent territorial boundaries, upon terms deemed to be equitable,—a power which has been exercised with reference to school districts. Laws 1885, c. 43; P. S., c. 89, ss. 14–27; *Sargent* v. *District*, 63 N. H. 528; *Union School District* v. *District*, 71 N. H. 269. "It would seem to follow that the inhabitants of a school district have no rights in the existence or in any of the corporate functions of the district, which can be regarded as vested rights, or which can be set up as beyond legislative control. The authority of the legislature in the premises being supreme, any such vested rights in the district as a body, or in the inhabitants composing it as individuals, would be inconsistent with that authority in the legislature, and hence cannot exist." *Farnum's Petition*, 51 N. H. 376, 379; *Wooster* v. *Plymouth*, 62 N. H. 193, 208. Since the defendant is an agency of the government, receiving all its powers from the legislature and holding its water-works located in Canaan for the benefit and convenience of the public, the constitutional doctrine of equal and proportional taxation, as applied to the facts of this case, has no application.

Nor does it follow from this result, that if the legislature should authorize the defendant to engage in purely commercial pursuits and had the power to do so, property acquired by it in an adjoining town and used by it would escape taxation. A discussion of the supposed analogy would not be useful and is unnecessary. It is sufficient to hold that when an agency of the state, like the defendant, maintains water-works for the benefit of the public, its property so used is not taxable, though in part located in an adjoining town, in the absence of express legislation making it taxable. See *Opinion of the Justices*, 155 Mass. 598. It is also a misconception to say that while the use of the water-works is public as to the inhabitants of the district, it is private as to the inhabitants of Canaan. This argument, as before shown, would also prove that the use is private as to the inhabitants of Enfield not living within the district. But its fallacy consists in treating the taxpayers or the citizens of the district as though they were stockholders in a private corporation and were benefited by having the exclusive right to use the water. Evidently they have no such right. All the citizens of Canaan, and in fact everybody, may enjoy the advantage and convenience of the defendant's water supply. No one is excluded from the public benefit; and though a resident of Manchester may never go to Enfield to quench his thirst and may never have property interests there, his right to the public benefit is none the less real. His convenience in connection with that of all other people, and not merely and exclusively that of the inhabitants of a part of the town of Enfield, seemed to the legislature to require or justify the

establishment of the works and its maintenance by the defendant. *State* v. *Griffin*, 69 N. H. 1, 29–31.

Whether the legislature may authorize the taxation for state purposes of some municipal water-works, and exempt others or omit to include them in the designated classes of taxable property, is a question that is not germane to the present inquiry. The sole question presented is whether under chapter 221, Laws 1903, the tax assessed upon the property of the water district by Canaan is a legal tax; and that question is answered in the negative by holding that municipal water-works are not taxable as real estate unless expressly made so by statute, and. that the express exemption of such property in the statute in question was merely a recognition of a fundamental principle relating to the taxability of public property that had been recognized and acted upon for a long period of time. So construed, the statute violates no provision of the constitution. Whether there may be other special statutes or charters relating to the taxation of public water-works, whose true construction might show that they are violative of the constitution, it is unnecessary to determine in the present case; for if it were conceded that there are such statutes, the validity of the statute now under consideration would not be thereby impaired. It is unnecessary to define the extent of the legislative power of imposing taxes upon public corporations in a case like this, where the effect of the statute is, not to impose a tax upon the property, but to leave it in the untaxable class of property.

In accordance with the provision of the agreed case, there must be judgment for the defendant.

PARSONS, C. J. By agreement of parties, the sole question for decision is the validity of the tax sought to be collected in this proceeding. The defendants contend, not only that the tax is not authorized by law, but that its assessment is expressly forbidden by legislative enactment. They are a fire district,—a municipal subdivision of the state,—organized under the general law and embracing a portion of the territory of the town of Enfield. In 1903, they applied to and secured from the legislature authority to construct and maintain suitable water-works for the purpose of distributing throughout the district an adequate supply of water for extinguishing fires and for the use of the citizens. Laws 1903, c. 221.

The first question raised is the interpretation of this act: whether it does or does not disclose a legislative intent to exclude the property taxed from the operation of the tax laws of the state. Prior to the passage of the act, the district had purchased the land in the town of Canaan which it has been attempted to subject to

the tax in question. Section 4 of the act expressly ratifies and confirms "the purchase of real estate and water rights already made by said fire district"; and as ratification is equivalent to prior authority, it would seem beyond question that the defendants' ownership of the real estate and water rights in Canaan was within the authority conferred upon them and was lawful. Section 4 also provides that "all the property of said fire district used in the construction and operation of its water-works shall be exempt from taxation."

Under the statutory definition of the word "town" (P. S., *c.* 2, *s.* 5), the defendants are exempted by general law from taxation upon their real estate used for public purposes, which would appear to include the water-works. P. S., *c.* 55, *ss.* 2, 3. But in *Newport* v. *Unity*, 68 N. H. 587, upon consideration of the various provisions of the statutes relating to the taxation of town property held for public purposes, it was determined that the legislative intent, as evidenced by the statutory expressions applicable to that case, was that property owned by one town and held for public water-works, if situated in another town, should be taxable in the town where it was situated; and therefore, unless exempted by the special statute relied upon, this water-works property was liable to be taxed. At the time of that decision Concord had been specially authorized to own real estate and water rights in the towns of Boscawen, Webster, and Hopkinton (Laws 1891, *c.* 261; Laws 1895, *c.* 180), and had been by the enabling act perpetually exempted from taxation on "all property, real and personal, owned and used by said city in the operation of said water-works outside the limits of said city." Laws 1891, *c.* 261, *s.* 6. The Whitefield Village Fire District was also authorized to hold property for water-works purposes in the adjoining town of Jefferson, and said water-works, "with all extensions thereof," were exempted from taxation (Laws 1893, *c.* 167, *ss.* 4, 10); while Manchester had been authorized to take or purchase land in Auburn (Laws 1891, *c.* 26, *s.* 2), Exeter, in Stratham (Laws 1893, *c.* 220), Dover, in Rollinsford, Somersworth, and Madbury (Laws 1889, *c.* 170), Somersworth, "outside of said town of Somersworth" (Laws 1891, *c.* 143), and Ashland, in New Hampton (Laws 1895, *c.* 195), without any provisions as to taxation. The force of this decision therefore was, that in the absence of express language excluding property of this character from taxation, the legislature intended it should be taxed. The soundness of the decision in *Newport* v. *Unity* is now questioned, but no effort has been made to change it by legislative action. There is no evidence that any legislation has been adopted upon the theory that this decision was erroneous. Subsequent legisla-

tion must therefore be interpreted as adopted with the under-
standing that this decision correctly construed the general statute
law.    Whether the decision is sound or not, is immaterial upon
this branch of the case.   Since the decision was announced in
July, 1896, there have been numerous enactments relating to
water-works construction and operation by towns and districts.
In some express authority is given to hold property beyond the
territorial limits of the town or district; in others such power may
be inferred from the general language used, as in *Newport* v. *Unity*.
Some have been expressly confined in their operation to town
limits.   A few contain express exemptions from taxation.   It is
unnecessary to refer to these enactments in detail.*   They estab-
lish a legislative judgment, that in some cases property of this
character, owned and situated as this is, ought not to be included
in the list of taxable property.   Taking into consideration this
understanding, the language conferring the power to take and
hold real estate and water rights identical with that held in *New-
port* v. *Unity* to authorize the holding of real estate in another
town (Laws 1895, *c.* 169, *s.* 1), and the fact that the property
had been purchased when the act was passed and that all such
purchases previously made were ratified and confirmed by the act,
it seems clear that the legislature must have intended by the
clause, "all the property of said fire district used in the construc-
tion and operation of its water-works shall be exempt from taxa-
tion," to remove this property from the list of taxable estate.
As the legislature did not intend this property should be taxed,

---

* In addition to the acts cited in the text, the following have been exam-
ined: Laws 1899, *c.* 205 (Portsmouth), Laws 1901, *c.* 183 (Plymouth Village
Fire District), Laws 1901, *c.* 265 (Jaffrey), Laws 1901, *c.* 289 (Durham), Laws
1903, *c.* 255 (Littleton), Laws 1905, *c.* 169 (Wilton), and Laws 1907, *c.* 247
(Lebanon Center Village Fire Precinct). All the foregoing are expressly
authorized to go outside town limits. Only Portsmouth and Durham are
exempted from taxation. Bartlett Village Fire Precinct (Laws 1897, *c.* 139)
and Hillsborough Bridge Village Fire District (Laws 1897, *c.* 150), while not
expressly authorized to extend beyond their territorial limits, are exempted
from taxation. Goffstown Fire Precinct (Laws 1891, *c.* 269; Laws 1893,
*c.* 162) appears to be limited to Goffstown, but is expressly exempted from
taxation. Sunapee (Laws 1901, *c.* 197) and Gorham (Laws 1905, *c.* 188) are
confined to the town, as apparently is Claremont (Laws 1899, *c.* 180). Other
enabling acts are Laws 1897, *c.* 180, *ss.* 8, 9 (Warner), Laws 1903, *c.* 229
(Hudson), Laws 1903, *c.* 328 (Greenville), and Laws 1905, *c.* 170 (North Con-
way Water Precinct). Chapter 126, Laws 1907, gives general authority to
towns and precincts, but confines their powers to the town acting itself, or
in which the precinct constructing water-works is situated.

legislative authority for the imposition of the tax appears to be wanting.

But the plaintiffs contend that nevertheless the property must be taxed, because (1) the town of Canaan has either a constitutional right, or a right prior or superior to the constitution, in its corporate capacity to tax all property within its territorial limits; (2) because if this property is not taxed, the other Canaan taxpayers will in effect be compelled to contribute the amount it should be taxed toward the maintenance of the Enfield waterworks, and such enforced contribution violates provisions requiring uniformity and equality in taxation; (3) because the act is special as to the Enfield water-works, and has not general application to all municipal water-works property similarly situated. None of these considerations will support the tax in question.

First, as to the constitutional or corporate right of Canaan to tax all property within its limits. There is no such right. The case is confused by the fact that the town of Canaan appears as plaintiff. To the eye, at least, the action appears to be a controversy between the two municipalities, and to involve necessarily a right of one against the other. The right claimed is not one of corporate power, governmental or proprietary, but of the exercise of the taxing power,—"an incident of the highest sovereignty," which "resides in government as a part of itself." *Phillips Academy* v. *Exeter*, 58 N. H. 306, 307; Cool. Tax. 479; Cool. Con. Lim. 3. "The power of taxation is an attribute of sovereignty belonging to the people; and this power, so far as it has been granted at all, has been delegated under our constitution to the legislature. . . . Towns have no power . . . to change or modify the public law regulating taxation." *Perley*, J., in *Mack* v. *Jones*, 21 N. H. 393, 395; *Chase*, J., in *New London* v. *Academy*, 69 N. H. 443, 444. Under the constitution, the taxing power can be exercised only by force of direct authority from the people, or by the legislature, or through authority derived therefrom. "No . . . tax . . . shall be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the people or their representatives in the legislature, or authority derived from that body." Bill of Rights, *art.* 28. No tax can be levied by virtue of the action of any subordinate municipal body unless authority for such action has been conferred by the legislature. 2 Dill. Mun. Corp., *s.* 536. In this state, the execution of the taxing power immediately affecting the taxpayer is in the hands of officers chosen by the municipal subdivisions of the state—the selectmen or assessors, and collectors. Such officials in the performance of these duties are pub-

lic officers—not agents of the municipality through whose agency they are chosen.

In *Hibbard* v. *Clark*, 56 N. H. 155, it was held that taxes were not a debt or demand from taxpayers to the town, in such sense that they could be set off by the town summoned as trustee of such taxpayer against an amount due from the town to such person. One reason given was that neither the collector of taxes nor the town could maintain a suit for the collection of taxes. In Laws 1881, chapter 28, it was provided that " the selectmen of any town . . . may, in a particular case, cause any tax collectible by any town . . . officer to be collected by suit at law or bill in equity." P. S., c. 60, s. 17. It is said incidentally in *Dana* v. *Colby*, 63 N. H. 169, 171, that this statute authorizes a suit in the name of the town. Whether the suit should be in the name of the town or of the officer charged with the collection of the tax may not be very material as to the maintenance of the action, although the latter seems to be the usual course. See cases cited in Cooley on Taxation 300, note 4. But if for some purposes, including its collection by suit, the tax may be regarded as a debt, it is a debt owed not to the town as a corporation, but to the public. *Dana* v. *Colby, supra; Edes* v. *Boardman*, 58 N. H. 580, 585. If the town of Canaan may properly appear as plaintiff in the suit, such appearance is not by virtue of any private proprietary interest in the tax. So far as this suit is concerned, as plaintiff it represents the state in the exercise of its sovereign taxing power. Its interest and rights are no more than if the suit were in the name of the tax collector, or if the question involved were the validity of a sale of the defendants' property under the collector's warrant. So far as the town is a party to this suit in the execution of the sovereign power of taxation, the town plaintiff is a mere piece of governmental machinery. *Gooch* v. *Exeter*, 70 N. H. 413. It appears in its purely public capacity in this case for the state, and is the state. The reservations of the bill of rights for the protection of rights not public but private have no application. *Wooster* v. *Plymouth*, 62 N. H. 193 ; *Farnum's Petition*, 51 N. H. 376. The plaintiff as a town in any capacity has no control over the questions involved in this tax. It cannot by town vote direct whether the property in question should be assessed for taxation or not, or determine its value. By similar action it could not authorize this suit. It has no control over it. Payment to the collector would defeat the suit, and a vote of the town to become nonsuit, or to submit to a verdict for the defendants, could not be pleaded in defence of the action and would not discharge the tax. Although named as plaintiff, the town of Canaan is in no sense a party to the controversy, which is between the state in the exer-

cise of its taxing power and the taxpayer defending. As a governmental agency, the town of Canaan has no power to assess taxes. Taxes are assessed by governmental officers under legislative direction. Whatever private proprietary right of taxation, if any, the town of Canaan possessed prior to the constitution, no such right was reserved to it by that instrument; but such right was expressly denied to it by the provision permitting taxation only by the legislature, or through authority derived therefrom.

But while no rights of the town are infringed by the exemption from taxation of the defendants' property within the plaintiffs' territorial limits, the constitutionality of the exemption, as infringing constitutional rules of uniformity and equality and general legislation as to the individual taxpayers of the town, remains to be considered. It is argued that if this property is not taxed, the burden of the remaining taxpayers is increased; that remitting the defendants' tax of $11.87 is precisely the same as levying a tax of $11.87 upon the remaining taxpayers, and presenting the proceeds to the defendants. *Morrison* v. *Manchester*, 58 N. H. 538, 550; *State* v. *Express Co.*, 60 N. H. 219, 251, 252.

It is undoubtedly true that all exemptions from taxation are practically equivalent to a direct appropriation. Such is the effect of the exemption of houses of public worship, parsonages in part, and seminaries of learning. *State* v. *Express Co.*, 60 N. H. 219, 260. Upon the ground that the imposition of a special tax upon the inhabitants of Canaan, to support the water-works of Enfield not intended to serve any portion of the territory of Canaan, would be beyond the power of the legislature, it is urged that, since the exemption would be practically equivalent to such a tax, the exemption must be invalid as contrary to general principles of taxation, well understood in this state and repeatedly elaborated in the decisions of this court. If the question is considered as merely one of equality in taxation, this conclusion seems abundantly sustained by our decisions. *Opinion of the Court*, 4 N. H. 565; *Smith* v. *Burley*, 9 N. H. 423, 437; *Morrison* v. *Manchester*, 58 N. H. 538, 548, 555; *Edes* v. *Boardman*, 58 N. H. 580; *Carpenter* v. *Dalton*, 58 N. H. 615; *First Nat'l Bank* v. *Concord*, 59 N. H. 75, 77, 78; *Berry* v. *Windham*, 59 N. H. 288; *Robinson* v. *Dover*, 59 N. H. 521; *Boston etc. R. R.* v. *State*, 60 N. H. 87, 94; *Berlin Mills Co.* v. *Wentworth's Location*, 60 N. H. 156; *State* v. *Express Co.*, 60 N. H. 219; *Franklin Street Society* v. *Manchester*, 60 N. H. 342, 347; *Weeks* v. *Gilmanton*, 60 N. H. 500; *Curry* v. *Spencer*, 61 N. H. 624; *Cheshire County Tel. Co.* v. *State*, 63 N. H. 167, 169; *Boston & Maine R. R.* v. *State*, 63 N. H. 571, 573; *Boody* v. *Watson*, 64 N. H. 162; *Holt* v. *Antrim*, 64 N. H. 284; *Winkley* v. *Newton*, 67 N. H. 80; *Kennard* v. *Manchester*, 68 N. H.

61; New London v. Academy, 69 N. H. 443; Amoskeag Mfg. Co. v. Manchester, 70 N. H. 200; S. C., 70 N. H. 336.

Though the principle relied upon is sound, the application of it as a determinative factor in this case is erroneous. So applied, it proves too much. If it establishes that the exemption is invalid in this case, then all exemptions of every kind and nature are equally invalid; for the exclusion of any property from taxation, to the extent that it is thereby relieved, must as a mathematical proposition increase the burden upon property that is taxed. The exemption of the public property of the state or any of its subdivisions must also in the same way increase the local burden upon the community where it is situated—a burden which could not by the taxing power be directly placed on such community for a non-local purpose. But the principle involved in the question of legislative power to pass the enabling act is not one of taxation, but of exemption. If the constitution requires all property within the state to be taxed, then the exemption is illegal. If it does not require the taxation of all property, the effect that may be produced by the taxation of less than all would seem to be immaterial.

The constitution is not self-executing in the matter of taxation; the details by which an equal division of the expense of protection shall be made are not prescribed by the instrument. Bill of Rights, art. 12; Const., arts. 2, 5, 6. The framers of the constitution were practical men—not theorists. To them the document was a practical instrument. While prescribing an equal division of the expense of protection, they left the scheme by which such equal division should be worked out to the legislature, being careful to provide against the taking of any part of a man's property for such expense without the assent of the legislature in article 12 of the bill of rights, and repeating that declaration with specific reference to taxation in article 28. It would seem from the reading of these provisions that no tax of any particular property or person could be justified except by virtue of an act of legislation imposing it, and that the framers of the constitution meant by an equal division of the expense of protection such a division as would be "proportional and reasonable," having due regard "for the benefit and welfare of the state" and the special injunctions of article 82 (83). The framers of the constitution must also have had in mind the existing practice in levying taxes, for they specially provided for the assessment of the charges of government " on polls and estates in the manner that has heretofore been practiced." Const., art. 6.

But we are not left entirely in the dark to speculate at this late day upon the subject, nor are we at liberty now to draw from

the general terms of a practical instrument the inference that the parties to the contract had in mind an impossible and impractical scheme of altruistic equality. The meaning of the instrument as to the power of legislative exemption from taxation is shown by the uninterrupted exercise of the power since its date. The fact of exemption appears from the reported decisions of this court reaching back a hundred years and by the statutes of the state going even farther back. "It is a well settled rule, that no tax shall be considered as imposed by law, in the absence of a manifest declaration of the intent of the legislature to impose it. . . . Taxation not provided, and in fact prohibited, by law is no taxation—is a purely void act." *Sunapee* v. *Lempster*, 65 N. H. 655, 656.

"By the constitution (Bill of Rights, *arts.* 12, 28; Part II, *arts.* 5, 6) and the uniform practice under it for more than a hundred years, no property can be taxed except such as is declared taxable by the legislature. . . . Much property has been and still is untaxed." *Carpenter*, J., in *Boody* v. *Watson*, 64 N. H. 162, 195. "By our statute, all real estate, with certain specified exemptions, is liable to be taxed. . . . Our statute sets out and describes the different classes of personal property liable to be taxed, and no other personal property than the kinds thus specified and enumerated is liable to be taxed in this state." *Perley*, C. J., in *Nashua Savings Bank* v. *Nashua*, 46 N. H. 389, 392. "There are and have been . . . two classes of statutes upon the subject of taxation. The object of one is to establish the rates and enumerate the property to be assessed." *Smith* v. *Burley*, 9 N. H. 423, 429. "There is no doubt that the legislature may provide by general laws for the exemption of certain classes of property from taxation, as well as exempt it . . . by omitting it in the description of property required to be taxed." *Brewster* v. *Hough*, 10 N. H. 138, 142. "To establish the rules by which each individual's just and equal proportion of a tax shall be determined is a task of much difficulty, and a very considerable latitude of discretion must be left to the legislature on the subject. . . . Within the limits of this discretion, as to the selection of proper subjects of taxation and the proportion of the tax that shall be laid on each subject, the authority of the legislature is, without question, supreme." *Opinion of the Court*, 4 N. H. 565, 570. "From the time of the adoption of the constitution to the present day, only such estates and property have been held to be taxable as the statute in force at the time has declared subject to assessment; and from time to time classes of property, by act of the legislature, have been added to or struck from the list of taxable estates. We are not aware that the legis-

lative power to do this, under our constitution, has ever been questioned." Report of Judge Sawyer, Chairman of Tax Commissioners, 1876, *p.* 8.

Although real estate generally has been taxed, since the Revised Statutes of 1842 certain classes of real estate have been expressly exempted. R. S., *c.* 39, *s.* 2; G. S., *c.* 49, *s.* 2; G. L., *c.* 53, *s.* 2; P. S., *c.* 55, *s.* 2. And prior to the Revised Statutes, if not specially excluded, lands owned by the town were not taxed. "There are and always have been exemptions, where the statute has not expressly made any. They depend on invariable usage, growing out of the reason and nature of the thing. They are more ancient than our statutes (1770), and are not repealed except by express clauses for the purpose, or by provisions necessarily and manifestly repugnant." *Smith,* C. J., note to *Kidder* v. *French,* Smith (N. H.) 155, 157 (1807); *Franklin Street Society* v. *Manchester,* 60 N. H. 342; *Grafton County* v. *Haverhill,* 68 N. H. 120. The universal, contemporaneous, and continuous understanding that no property was taxable except such as was enumerated by the legislature for that purpose seems to follow logically from the constitutional provision that no tax should be laid except by the legislature or authority derived therefrom.

But the meaning of the instrument is settled by the continuous and uninterrupted interpretation placed upon it for over one hundred and twenty years. The question is not now an open one. *Pierce* v. *State,* 13 N. H. 536, 573; *Dublin Case,* 38 N. H. 459, 512; *Great Falls Mfg. Co.* v. *Fernald,* 47 N. H. 444, 459; *Copp* v. *Henniker,* 55 N. H. 179, 209; *King* v. *Hopkins,* 57 N. H. 334, 356; *Morrison* v. *Manchester,* 58 N. H. 538, 551, 552; *State* v. *Hayes,* 61 N. H. 264, 322; *Boston etc. R. R.* v. *State,* 62 N. H. 648, 649; *Keniston* v. *State,* 63 N. H. 37, 38. No case is to be found holding a tax invalid because of the exemption of other property by either express provision or failure to enumerate it as taxable. No case is found in which a tax assessed upon property exempted by the legislature has been held valid. There are many cases in which the extent of a claimed exemption has been discussed and time spent in ascertaining the legislative intent, which was simply wasted if it had been understood that no exemption at all was permissible. In *Warde* v. *Manchester,* 56 N. H. 508, a petition for the abatement of taxes assessed upon property made exempt by the statute, the tax was abated upon the ground that the legislature in exempting the property in question—a seminary of learning—performed a duty prescribed by article 83 of the constitution; and in *Opinion of the Court,* 4 N. H. 565, 570, and in *Sunapee* v. *Lempster,* 65 N. H. 655, exemptions from poll taxes are expressly approved. In *Opinion of the Court,* while it is con-

ceded that a tax upon every poll in the state might be proportional, it is said : " No person would suppose such a tax would be just and reasonable." Under the settled construction of the constitution, the power of the legislature to exempt from taxation a certain class of property, as for example that used for maintaining public water-works, by omitting it from the list of taxable estate or by expressly excluding it therefrom, cannot be denied.

But assume that this universal, uninterrupted interpretation of constitutional uniformity and equality in taxation is erroneous and must be reversed. As has been already said, the constitution is not self-executing in this respect. It does not authorize any officials or department to assess taxes, except by authority from the legislature. If the true construction of the constitution requires the legislature to impose taxation upon all classes of property in the state, the failure of the legislature to comply with the constitutional command would be a violation of duty imposed on it by the fundamental law. If we assume the action of the legislature to have been unconstitutional because of a failure to tax all classes of property, the unconstitutional action of the legislature in refusing or neglecting to provide for the taxation of certain classes of property would not authorize the court to invade the domain of the legislature and order the taxation of such property; for the power of taxation is included within the supreme legislative power vested by article 2 of the constitution in the senate and house of representatives. *Morrison* v. *Manchester*, 58 N. H. 538, 548, 549. In Minnesota, under a constitution requiring " all taxes . . . to be as nearly equal as may be " and authorizing a tax upon all inheritances, it was held that a law which did not place the tax upon all inheritances, but exempted some not within the exception of the constitution, was void. *Drew* v. *Tifft*, 79 Minn. 175,—79 Am. St. Rep. 446 ; *State* v. *Bazille*, 87 Minn. 500,—94 Am. St. Rep. 718. The court did not undertake to correct what they considered a violation of their constitution, by extending the law so as to include property which ought to have been, but was not, within its terms.

" If the language of the statute is capable of being so construed as to be consistent with the constitution, the court is bound to give it that construction. If not capable of such construction, all the court can do is to pronounce it void. This is the whole extent of the doctrine. . . . It does not authorize the addition to the statute of such words, provisions, or modifications, not therein expressed or implied, as may be necessary to render it consistent with the constitution. If it did, an unconstitutional statute would be impossible. By addition or subtraction its defects would be cured." *State* v. *Gerry*, 68 N. H. 495, 503. In *Boody* v.

*Watson*, 64 N. H. 162, the power of the court to reverse the action of selectmen in exempting certain property which the true construction of the statute showed the legislature intended should be taxed, and to correct the error by ordering an assessment of the tax, is declared, but there is no suggestion of power in the court to order an assessment in violation of the command of the legislature. Nor is there in that case or the preceding (*Boody* v. *Watson*, 63 N. H. 320) question of the validity of the exemption if authorized by the legislature. Whatever power the court may have to correct unconstitutional action of the legislature in the exercise of the power of taxation confided to that body by the constitution, its power would seem to be limited to declaring the invalidity of taxes assessed under an enactment void because of lack of conformity to the constitution. It cannot make an act taxing some and exempting others valid by extending it so as to include property which the legislature intended should not be taxed, and thereby validating taxes not authorized by the legislature.

Taking all the legislation as to the taxation of municipal water-works, recited earlier in this opinion, together, the legislative intent clearly expressed is that some towns owning property for water-works purposes without their territorial limits should pay taxes on the property in the town in which it is situated, and that others should not. Whether as an exercise of the taxing power such a scheme of taxation is within legislative power, is not material in this suit. So far as it may be claimed that the existing law upon the subject is unequal, if under it Newport and Littleton are required to pay taxes while Concord and Enfield are not, such inequality between different water-works towns is no concern of the plaintiff or its taxpayers. A constitutional question is not generally considered unless raised by one whose right has been invaded by the alleged breach, nor unless its decision is necessary to the determination of the case. *Copp* v. *Henniker*, 55 N. H. 179, 203; 'Cool. Con. Lim. (7th ed.) 232; 6 Am. & Eng. Enc. Law 1090. Canaan taxpayers are not injured because Littleton and Newport pay taxes, while Enfield does not. Their share of state and county expense is made less, not more, if affected at all, by the error of which they complain; while each taxpayer's share of local Canaan expense is not affected in any way by the taxation or non-taxation of any particular estate outside the town. Whether, as between different water-works towns similarly situated, the law is unequal as imposing different burdens upon each, is a question that may be raised by a town complaining of a burden of taxation imposed upon it and not on others, which perhaps might have been raised, but apparently was not, in *Newport* v. *Unity*.

If this question is raised, it may be a sufficient answer that towns or fire districts have no constitutional right to construct waterworks or to invade the territory of other towns to obtain their supply, and that they cannot complain if the privilege granted and accepted is accompanied by the burden of taxation. This consideration may or may not be sufficient to determine the question. Other answers may be found. It is not intended to suggest that the fact that municipal subdivisions are mere agencies of the state is not a sufficient answer. Local reasons may require taxation in some cases and not in others, precisely as the privilege of going outside the town has seemed necessary for some towns and not for others, or as some towns have been granted the privilege of taking or purchasing existing local aqueducts while others have been expressly excluded from interfering with any pond, spring, or stream used as the source of supply of an existing aqueduct. See the various enabling acts cited *supra*. No ground is perceived upon which it can be held that all such acts must be identical.

But the question, as has been said, is not one of taxation but of exemption; of the exercise, not of the taxing, but of the protective power. "An act entitled an act of taxation may be valid, although not an exercise of the power of collecting the constitutional shares of expense. The title may be an immaterial misnomer and error of form only, and the act may be an exercise of some of the other powers which provide for the common benefit, protection, and security, and which may be conveniently grouped under the name of the protective power. . . . The payment of bounties by tax exemptions, and the receipt of compulsory contributions under the protective power, though they affect the revenue, are not to be confounded with the operation of the tax power which collects the constitutional shares of the expense of protection." *State* v. *Express Co.*, 60 N. H. 219, 257, 259, 260. In the protective power rests the authority for the entire waterworks constructing and maintaining power given the defendants and many other towns and districts. Russ. Pol. Pow. 89. That the supply of water for fire protection and the promotion of the health of the citizens is a public service in which the government may engage, and as to which it has power to make various regulations affecting more or less the private property rights of citizens in no way interested in a particular service, may safely be assumed without citation of authority. P. S., *c.* 108, *ss.* 13, 14; Laws 1895, *c.* 76, *ss.* 1–5.

All the questions material in this case between these parties were raised in *State* v. *Griffin*, 69 N. H. 1, and after most exhaustive consideration settled adversely to the plaintiffs' contentions here. The case was a proceeding under section 1, chapter 26,

Laws 1891, prohibiting under a penalty the placing of sawdust by any person in Lake Massabesic in Auburn and Manchester, or in any tributary thereto. The defendant was a riparian proprietor in Auburn, upon a brook flowing into the lake, and operated a saw-mill, the sawdust from which, passing into the brook, was carried away into the lake. For so doing he was found guilty and fined by a magistrate under the statute, and upon his appeal it was claimed that the statute was unconstitutional because he was deprived of his property right as a riparian proprietor, of using the brook to carry off the sawdust, without compensation, and that the law was an unequal one because the statute was special instead of general and discriminated in favor of some citizens to the detriment of others. This is precisely the contention here: that through the effect of the exemption, the citizens of Canaan are deprived of property through the taxing power without the compensation of protection to which they are entitled, and that the statute is limited in its application to Enfield. In that case the defendant relied on his property rights in Auburn while the water-works were solely for the benefit of Manchester, as here the plaintiff relies on alleged rights of property owners in Canaan as against a public use confined to Enfield. "The police power of the state extends to the protection of the lives, health, comfort, and quiet of all persons, and the protection of all property, within the state; and persons and property are subjected to such restraints and burdens as are reasonably necessary to secure the general comfort, health, and prosperity." State v. White, 64 N. H. 48, 50.

State v. Express Co., 60 N. H. 219, is an elaborate treatise upon the taxing power in this jurisdiction. Not sustainable as an exercise of the taxing power, the act there in question could not be sustained under the protective power, because as was said (p. 262): "There is no purpose for which we can presume the statute on which this suit is brought was designed to be a discouraging or encouraging act of the protective power." The contrary appears here. The protection of the property, health, comfort, and lives of the citizens is within governmental power; and the exemption from taxation of water-works designed for effecting such purpose has a plain tendency to encourage their construction and maintenance. But unless we are prepared to overrule State v. Griffin, it is unnecessary to elaborate the question further. The power to enact legislation for the purpose in view, which may to some extent interfere with private property rights without such compensation as must be awarded under the exercise of the power of eminent domain, or such return as is due for property taken under the taxing power, may be sufficiently rested upon the exhaustive

discussion to be found in that case. The power to act existing, the wisdom of its exercise is not a judicial question. *Gooch* v. *Exeter*, 70 N. H. 413, 415.

There may be good reasons why Manchester, acquiring a large tract of Auburn real estate for the protection of its Massabesic water supply, should pay taxes in Auburn, and none at all why Enfield should pay anything to Canaan. The tax sued for is trifling. Subtracting all but the local tax which alone concerns Canaan, it is more trifling still. It has appeared, however, in the course of the argument, that Enfield has expended a considerable amount of money to render the supply available, and that the tax upon the present valuation is a considerable sum. It does not appear that such improvements call for any additional expenditure for highways, schools, or police; so that the practical question about which the parties have been contending with so much earnestness is not whether the Canaan local treasury shall be deprived of an insignificant sum heretofore obtained by taxation of this land, but it is whether the public using this water shall be taxed a large amount for the profit of Canaan taxpayers. These considerations may not bear directly upon the constitutional question, but they tend to show that the exemption is not an unreasonable exercise of the protective power.

The plaintiffs concede the validity of the exemptions of public property of the state, county, and town (P. S., *c.* 55, *s.* 2), and do not attack the exemption of houses of worship, schoolhouses, and seminaries of learning, doubtless sustainable under some branch of the protective power. Const., *art.* 82 (83); *Warde* v. *Manchester*, 56 N. H. 508. The defendants contend that this property, owned by a municipal subdivision of the state and held for a public purpose, is within that class of property which the plaintiffs concede may be exempted, and they also claim that such property, in the absence of legislation expressly taxing it, is presumptively exempted from the operation of general tax laws. *Grafton County* v. *Haverhill*, 68 N. H. 120; *Franklin Street Society* v. *Manchester*, 60 N. H. 342, 347; *Kidder* v. *French*, Smith (N. H.) 155, 157; Cool. Tax. 130, 131. The decision in *Newport* v. *Unity* does not controvert, but concedes, this principle, and implies that but for the statute taxing such property, the water-works property of Newport held in Unity for the public purpose of supplying water in Newport would be exempt from taxation. *Wayland* v. *Commissioners*, 4 Gray 500; *Somerville* v. *Waltham*, 170 Mass. 160; *West Hartford* v. *Commissioners*, 44 Conn. 360; *Rochester* v. *Rush*, 80 N. Y. 302; *People* v. *Assessors*, 111 N. Y. 505; *Water Commissioners* v. *Gaffney*, 34 N. J. Law 131.

If water-works property publicly owned is not taxable except by force of express clauses taxing it, the omission to tax it, or the exclusion of it from the tax list, cannot be a violation of legislative duty. That the furnishing of water to the citizens of Enfield as a protection against fire and for the promotion of the health of the citizens is a public service is conceded, so far as Enfield is concerned. But it is urged that this is not public property so far as Canaan taxpayers are concerned, if it is public as to residents of Enfield Fire District. This contention fails to distinguish between the ownership and the use. The distinction made in many cases as to the liabilities of municipal corporations growing out of the ownership of property has been already alluded to. But it is unnecessary to consider whether the ownership of these works by the Enfield Fire District is or not, as to all other persons, governmental and public. That the use is sufficiently public to authorize the exercise in Canaan of the power of eminent domain granted by the special act is not denied. Whether the use is public must depend upon its character—not upon whether it is viewed from Enfield, Canaan, or Concord. As to the citizen of Enfield Fire District, not only is the use public, but the ownership is public. His property may be lawfully taken by taxation to support the enterprise, and he has a share in its management through his vote. The Canaan taxpayer cannot be taxed for the support of the works, neither has he any voice in the management. It can perhaps be fairly said that as to him the ownership is private; that his relation to it is precisely what it would be if the ownership were vested in a private corporation.

Upon the question whether ownership in this sense private is material upon the question of implied exemption from taxation of property owned in one town and situated in another, the authorities are not in entire accord, although the weight of authority tends to support the defendants' contention. *Sumner County* v. *Wellington,* 66 Kan. 590,—60 L. R. A. 850, note. In Massachusetts it seems to be the rule that property held for a public purpose for which it could be taken by eminent domain is exempt, in the absence of express provisions taxing it, regardless of the character of its ownership. *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491; *Worcester* v. *Railroad,* 4 Met. 564. This rule may not be generally admitted. Cool. Tax. 60. But whether the legislature may, for the advancement of a purpose deemed by them beneficial to the state, exempt a class of property from taxation, is a different question. Although the property may not be impliedly exempted because of its ownership, it may nevertheless be expressly exempted by the legislature to encourage such use for the general advantage of the state. The use being sufficient to justify an

express exemption, the ownership of the property is not material unless made so by the exempting statute. Whether the ownership of the property used in promoting a public purpose is private or public is immaterial. The question is settled by the universal practice under the constitution. See Judge Sawyer's Report 13–17; authorities *supra*; *State* v. *Griffin*, 69 N. H. 1; *Boston etc. R. R.* v. *State*, 62 N. H. 648, 649; *State* v. *Hayes*, 61 N. H. 264, 332; *Morrison* v. *Manchester*, 58 N. H. 538, 551, 552.

The defendants are engaged in the public service in a certain district. They are bound to serve all who apply for their service on equal terms. Their service is no less public because it does not extend through the whole state. The service of transportation furnished by the Chester and Derry Railroad with its seven or eight miles of track is equally public in principle, if not in extent, with that supplied by the Boston & Maine Railroad operating 1,038 miles. Whether, because the ownership of the property taxed in this case is confined to a particular subdivision of the state, such ownership is public or private as to territory not embraced therein, is immaterial. If the ownership were entirely private, such private character would not invalidate a general tax exemption granted by the legislature under constitutional power to provide for the common benefit, protection, and security.

But the plaintiffs say that if by general law the legislature might exempt all public water-works property from taxation, this exemption is invalid because it professed to deal only with the property of the Enfield water-works and not with water-works property generally. No clause in the constitution prohibiting legislation applicable to a particular place or subject is pointed out. Nothing therein contained expressly requires all legislative acts to be general in terms. If such was the requirement, not only would the particular provision be invalid, but the defendants' entire charter would be void, as well as all others of like character. The sole ground upon which this contention can stand, if at all, is that the exempting clause is " inconsistent with the equality of right which the constitution secures to all." There is no other ground for the contention. *State v. Griffin*, 69 N. H. 1. So far as all persons interested in this proceeding who are or may be affected by this exemption are concerned, it is an equal law. It affects all property within its reach alike. All persons may go to Enfield and enjoy the privileges of the water-works without the burden of the Canaan tax. " The equality of the constitution is the equality of persons and not of places—the equality of right and not of enjoyment. A law that confers equal rights on all citizens of the state, or subjects them to equal burdens, . . . is an equal law, though no one can enjoy the right, [or] be subjected

to the burden, . . . without going to or being in a particular part of the state." *State* v. *Griffin*, 69 N. H. 1, 30; *Gooch* v. *Exeter*, 70 N. H. 413, 415. The plaintiffs' contention on this point also is concluded by *State* v. *Griffin*. It is impossible to add anything to the discussion in that case. It may however be said, that to hold that the act is invalid on this ground would invalidate many acts not referred to in *State* v. *Griffin*. Charters of schools, seminaries of learning, and corporations for various religious, charitable, and educational purposes have been so exempted. It has not occurred to any one to claim that the exemptions were invalid on this ground. See *Alton Bay Ass'n* v. *Alton*, 69 N. H. 311; *New London* v. *Academy*, 69 N. H. 443; *Young Men's Christian Ass'n* v. *Keene*, 70 N. H. 223.

No good reason has been found for rejecting the principles elucidated in *State* v. *Griffin*; because of the uniform interpretation placed upon the constitution since 1784, it cannot now be held that no power of apportionment in taxation was granted the legislature by the constitution. Cool. Tax. 145. As no constitutional right of the town of Canaan or its taxpayers has been invaded by the legislative direction to the assessors of Canaan to omit this property from the invoice of the town, it is not necessary to speculate upon what basis listing it for taxation by them, without legislative authority for such action, can be sustained. I agree that there should be judgment for the defendants.

YOUNG, J. Although I concur in the result reached in this case, and in most of the reasoning of both the chief justice and Mr. Justice *Walker*, I wish to dissent from so much of the reasoning as seems to imply that a municipal corporation has rights which the legislature is bound to respect, that the defendants' property would not have been taxable even if the enabling act had not contained a clause exempting it from taxation, and that the legislature could not have taxed the defendants' property in either Enfield or Canaan by special act.

BINGHAM, J., concurred in the opinion of Mr. Justice WALKER: PEASLEE, J., not having been present at the argument, did not sit.

*Judgment for the defendants.*